[No. F054603. Fifth Dist. July 7, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
EUSEBIO RAMON, Defendant and Appellant.

COUNSEL

Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lloyd G. Carter, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CORNELL, J.—Eusebio Ramon was stopped by a Kern County Sheriff's deputy while driving a stolen vehicle and with an unregistered firearm in his possession. A jury convicted him of (1) receiving a stolen vehicle (Pen. Code, § 496d)[1]; (2) possession of a firearm by a felon (§ 12021, subd. (a)(1)) (hereafter section 12021(a)(1)); (3) carrying a loaded firearm while a member of a criminal street gang (§ 12031, subd. (a)(2)(C)) (hereafter section 12031(a)(2)(C)); and (4) carrying a loaded firearm for which he was not the registered owner (§ 12031, subd. (a)(2)(F)) (hereafter section 12031(a)(2)(F)). The jury also determined (1) Ramon was a member of a criminal street gang; (2) the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang; and (3) Ramon committed the crimes with the specific intent to promote, further, or assist in criminal conduct by gang members. (§ 186.22, subd. (b)(1); hereafter section 186.22(b)(1).)

Ramon contends that the section 186.22(b)(1) enhancement was not supported by substantial evidence and that he cannot be convicted twice of violating section 12031 for possessing the same firearm. We agree with both of Ramon's contentions. We will vacate the section 186.22(b)(1) enhancement and reverse the section 12031(a)(2)(F) conviction and remand the matter for resentencing.

## FACTUAL AND PROCEDURAL SUMMARY

Juana Uribe left her pickup truck in her driveway when she went out of town. When she returned the next day, the truck was missing. She reported the vehicle to the police as stolen. The police found her truck at 5:00 a.m. the following morning. Uribe had never met either Ramon or codefendant Carlos Martinez, Jr., and neither had permission to take the truck from her driveway.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

When the truck was returned to Uribe, she noticed the stereo was missing, there were dents along the side, and there were cigarette burns in the seats. The police showed Uribe a firearm that was found inside the truck. The firearm did not belong to Uribe.

Kern County Deputy Sheriff Lance Grimes was on patrol when he recognized Uribe's truck from the report Uribe had filed. Grimes initiated a traffic stop, but the truck pulled over to the side of the road before Grimes activated his emergency lights. Ramon was driving the truck and Martinez was in the front passenger's seat.

Grimes found a handgun under the driver's seat. A check determined the handgun was not registered. No fingerprints were found on the gun. Neither occupant of the vehicle made any gang signs or attempted to gain possession of the gun. The key with which the vehicle was being operated appeared to be a standard key. There was no apparent damage to the truck's ignition. There were no other cars in the vicinity at the time of the traffic stop.

Kern County Deputy Sheriff Scott Lopez testified as an expert witness on the topic of criminal street gangs. Ramon does not argue on appeal that Lopez was not qualified to testify as an expert witness or that there was insufficient evidence to support the finding that he was a member of the Colonia Bakers criminal street gang. We will, therefore, focus on the portions of the testimony that relate to the issues on appeal.

Lopez testified that the location where Ramon and Martinez were stopped was in the heart of Colonia Bakers gang territory. The territory is controlled through violence and intimidation. The primary activities of the Colonia Bakers gang were identified as (1) sales and possession of narcotics; (2) theft; (3) extortion; (4) burglaries; (5) robberies; (6) car theft; and (7) victim and witness intimidation.

When asked how possession of a stolen truck related to the above crimes, Lopez stated, "Driving a stolen truck within your territory, you could conduct numerous crimes. Any one of those crimes I mentioned you could conduct with a stolen vehicle and then dispose of that vehicle at the drop of a hat and have no ties to it, nor ties to the crime you just committed in that vehicle."

When asked about possession of a firearm, Lopez responded, "It's basically the same answer. You could, while in the stolen vehicle with a—not a stolen gun—an unregistered gun, you could conduct any one of those crimes that I

mentioned and not have any ties to the gun, not have any ties to the vehicle. And you could dispose of either one of those without having to worry about having ties back to you or the crime that you had just committed." Lopez later testified that the unregistered gun and stolen vehicle could be used to spread fear and intimidation. Therefore, according to Lopez, driving a stolen vehicle and possessing an unregistered firearm provided a benefit to the Colonia Bakers criminal street gang.

When asked a hypothetical question about whether the circumstances involved in this case—two gang members driving a recently stolen vehicle in gang territory with an unregistered firearm in the vehicle—would benefit the Colonia Bakers criminal street gang, Lopez replied, "Yes, sir. There's a huge benefit in furtherance of the gang. They could—I'm sorry—they could commit any one of those crimes I mentioned before in furtherance of the gang to benefit the gang; robbery, burglary, carjacking, any one of those crimes that could be committed while in possession of that truck or that firearm could be in furtherance of the Colonia Bakers street gang." Lopez then confirmed that the stolen vehicle and unregistered firearm were the tools the gang needed to commit other crimes to further the gang.

The amended information charged Ramon with (1) receiving a stolen vehicle (§ 496d); (2) being a felon in possession of a firearm (§ 12021(a)(1)); (3) possession of a firearm while an active gang member (§ 12031(a)(2)(C)); and (4) carrying a loaded firearm in public for which he was not the registered owner (§ 12031(a)(2)(F)). In addition, each count also alleged each of the following enhancements: (1) The crimes were committed for the benefit of a criminal street gang, in violation of section 186.22(b)(1); (2) Ramon suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b) through (i); (3) Ramon suffered two prior convictions and served prison sentences therefore within the meaning of section 667.5, subdivision (b); and (4) Ramon suffered a prior conviction that constituted a serious felony within the meaning of section 667, subdivision (a).

The jury found Ramon guilty of each charged crime and found that counts 1, 2, and 4 were committed for the benefit of a criminal street gang. After Ramon waived his right to a jury trial, the trial court found each of the remaining enhancements to be true.

The trial court sentenced Ramon to a midterm sentence of two years for receiving a stolen vehicle, which was doubled to four years pursuant to the provisions of section 667, subdivisions (b) through (i). He was sentenced to a

consecutive term of 16 months, one-third the midterm sentence after it was doubled pursuant to the provisions of section 667, subdivisions (b) through (i), for possession of a firearm while a felon. Ramon's sentence for receiving a stolen vehicle was increased by three years pursuant to section 186.22(b)(1)(A), five years pursuant to section 667, subdivision (a), and one year pursuant to section 667.5, subdivision (b). His sentence for possession of a firearm was increased by one year (one-third the midterm) pursuant to section 186.22(b)(1)(A). The trial court stayed the sentences on the remaining counts. The trial court sentenced Ramon to a total of 15 years four months in state prison.

## DISCUSSION

I.   *Sufficiency of the Evidence to Support the Gang Enhancement*

The jury found that Ramon committed counts 1, 2, and 4 for the benefit of a criminal street gang within the meaning of section 186.22(b)(1). This statute provides that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows . . . ." (*Id.*, subd. (b)(1)(A)–(C).)

The section 186.22(b)(1) enhancement requires the jury to find that the crime was committed for the benefit of a criminal street gang and with the specific intent to promote the criminal street gang. The only evidence on this issue was provided by the People's expert witness, Lopez. His testimony has been thoroughly reviewed above. In summary, Lopez relied on two independent facts in forming his opinion: (1) Both Ramon and codefendant Martinez were members of the Colonia Bakers criminal street gang, and (2) the two were stopped in territory claimed by the Colonia Bakers. From these two facts, along with the crimes the two were accused of committing, Lopez opined that the crime was committed for the benefit of the Colonia Bakers criminal street gang and was intended to promote the Colonia Bakers. Lopez's opinion was based on his belief that because the gun and the stolen vehicle could be used to facilitate the commission of a crime, and the Colonia Bakers commit crimes, the two must have been acting on behalf of the Colonia Bakers.

Ramon contends Lopez's testimony did not constitute substantial evidence to support his conviction. Ramon does not suggest there was insufficient evidence to support the two facts on which Lopez relied. Instead, Ramon argues these facts were not sufficient to permit Lopez to opine that the crimes were committed for the benefit of and with the specific intent to promote the Colonia Bakers criminal street gang.

To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 403 [133 Cal.Rptr.2d 561, 68 P.3d 1].) The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id.* at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480 [42 Cal.Rptr.3d 677, 133 P.3d 581].)

In *People v. Killebrew* (2002) 103 Cal.App.4th 644 [126 Cal.Rptr.2d 876] (*Killebrew*), the People's expert witness opined, through hypothetical questions, that every gang member in three cars apparently traveling together would know that a gun was located in one of the cars and would intend to possess that gun for his mutual protection. (*Id.* at p. 652.) After a lengthy review of expert testimony in gang cases, we held that the officer's opinion was nothing more than his view of how the case should have been decided and was inadmissible. (*Id.* at p. 658.)

This issue again was addressed by this court in *In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839] (*Frank S.*). The minor defendant in this case was stopped after committing a traffic violation. The minor gave a false name to the officer and was found to have concealed on his person a weapon, as well as methamphetamine. The minor told the arresting officer that he carried the weapon to protect himself from " 'the Southerners.' " (*Id.* at p. 1195.) The People's expert testified that the minor was an active member in a criminal street gang and that he possessed the weapon for his protection. The expert also testified that the gang benefited from the minor's possession of the weapon because it could be used for his protection and the protection of other gang members. (*Id.* at pp. 1195–1196.) Based on this evidence, the trial court found true a section 186.22(b)(1) enhancement. We reversed the

true finding on the gang enhancement. "In the present case, the expert simply informed the judge of her belief of the minor's intent with possession of the knife, an issue reserved to the trier of fact. She stated the knife benefits the Nortenos since 'it helps provide them protection should they be assaulted by rival gang members.' However, unlike in other cases, the prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang . . . .' [Citation.] The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended." (*Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.)

This case cannot be distinguished in a meaningful manner from *Killebrew* or *Frank S.* The People's expert simply informed the jury of how he felt the case should be resolved. This was an improper opinion and could not provide substantial evidence ·to support the jury's finding. There were no facts from which the expert could discern whether Ramon and Martinez were acting on their own behalf the night they were arrested or were acting on behalf of the Colonia Bakers. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1133 [9 Cal.Rptr.2d 577, 831 P.2d 1159].) " 'To be sufficient, evidence must of course be substantial. It is such only if it " 'reasonably inspires confidence and is of "solid value." ' " By definition, "substantial evidence" requires *evidence* and not mere speculation. In any given case, one "may *speculate* about any number of scenarios that may have occurred . . . . A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*Ibid.*)

The People point out that two factors missing in *Frank S.* are present in this case: (1) Ramon was with another gang member, and (2) Ramon was in gang territory. These facts, standing alone, are not adequate to establish that Ramon committed the crime with the specific intent to promote, further, or assist criminal conduct by gang members. While Ramon may have been acting with this specific intent, there is nothing in the record that would permit the People's expert to reach this conclusion.

In reaching our conclusion in *Killebrew*, we analyzed *People v. Gardeley* (1996) 14 Cal.4th 605 [59 Cal.Rptr.2d 356, 927 P.2d 713]. Specifically relevant to this case is the following quote from *Gardeley*: "Of course, any material that forms the basis of an expert's opinion testimony must be reliable. [Citation.] For 'the law does not accord to the expert's opinion the same degree of credence or integrity as it does the data underlying the opinion. Like a house built on sand, the expert's opinion is no better than the facts on which it is based.' [Citation.]" (*Id.* at p. 618.) The facts on which Lopez based his testimony were insufficient to permit him to construct an opinion about Ramon's specific intent in this case. His opinion, therefore, cannot constitute substantial evidence to support the jury's finding on the gang enhancement.

The People have not cited any case that remotely resembles the facts of this case or that supports their position. In *People v. Ferraez* (2003) 112 Cal.App.4th 925 [5 Cal.Rptr.3d 640], the jury found the defendant violated section 186.22, subdivision (a) by actively participating in a criminal street gang and assisting in felonious criminal conduct. The appellate court held there was sufficient evidence in the record to support this conviction. The People elicited testimony from their expert that the crime was committed for the benefit of a criminal street gang and assisted felonious conduct by the gang. The appellate court noted that "the expert's testimony alone would not have been sufficient to find the . . . offense was gang related. But here it was coupled with other evidence from which the jury could reasonably infer the crime was gang related. Defendant planned to sell the drugs in Las Compadres gang territory. His statements to the arresting officer that he received permission from that gang to sell the drugs at the swap mall and his earlier admissions to other officers that he was a member of [the Walnut Street criminal street gang], a gang on friendly terms with Las Compadres, also constitute circumstantial evidence of his intent." (*Ferraez*, at p. 931.) While the defendant in *Ferraez* and Ramon were both members of criminal street gangs, Ramon did not admit that he was acting at the behest of or with the permission of the Colonia Bakers.

The issue in *People v. Zepeda* (2001) 87 Cal.App.4th 1183 [105 Cal.Rptr.2d 187] (*Zepeda*) was whether expert testimony should have been allowed in a murder trial. Ample evidence connected the defendant to the crime. The victim, however, was a complete stranger to the defendant. The victim was a member of a Norteño criminal street gang, while the defendant was a member of a Sureño criminal street gang. The victim was walking down the street when the defendant drove up and asked him, " 'where are you from?' " (*Id.* at p. 1190.) The defendant then fired several shots at the victim and drove away. The People offered expert testimony to establish a motive for the shooting. When asked why someone would ask where a person was from and then shoot him or her, the officer stated that the primary reasons would be to

establish the gang in the neighborhood and to establish the defendant within the gang. By doing so, the gang's reputation was enhanced and it would be easier to attract recruits. (*Id.* at pp. 1207–1208.) The appellate court concluded the expert testimony was admissible testimony on the culture and habits of criminal street gangs. (*Id.* at pp. 1208–1209.)

Unlike *Zepeda*, Ramon's motive was not an issue at trial. The issue in the gang enhancement context was whether Ramon was acting with the specific intent of assisting his criminal street gang. In *Zepeda* the expert provided a possible motive for the shooting. Motive, however, was not an element of the offense, nor was the prosecution required to prove the defendant's motive. Therefore, while the expert testimony would assist the jury in understanding why the victim was murdered, it did not have to be proven beyond a reasonable doubt. Other evidence was used to prove the defendant was the person who killed the victim.

■ Here, the People's expert gave a possible motive or reason for Ramon's being in possession of the stolen vehicle and gun. The prosecution, however, was required to prove this fact beyond a reasonable doubt. While the People's expert's opinion certainly was one possibility, it was not the only possibility. And, as stated *ante*, a mere possibility is not sufficient to support a verdict.

The analysis might be different if the expert's opinion had included "possessing stolen vehicles" as one of the activities of the gang. That did not occur and we will not speculate.

Simply put, in order to sustain the People's position, we would have to hold as a matter of law that two gang members in possession of illegal or stolen property in gang territory are acting to promote a criminal street gang. Such a holding would convert section 186.22(b)(1) into a general intent crime. The statute does not allow that. (See § 186.22(b)(1); *People v. Hill* (2006) 142 Cal.App.4th 770, 774 [47 Cal.Rptr.3d 875].)

■ The remaining cases we have reviewed, those cited by the parties and as a result of our own research, have not revealed any situation where expert testimony about a possible reason for committing a crime was sufficient, by itself, to establish the crime was committed with the specific intent to promote, further, or assist in criminal conduct by gang members. We confirm that such testimony is not sufficient to support a section 186.22(b)(1) enhancement. Accordingly, we vacate the true finding on this enhancement.

## II. *Two Section 12031 Convictions*

The jury convicted Ramon of (1) possession of a firearm by a felon (§ 12021(a)(1)); (2) possession of a loaded firearm while a member of a

criminal street gang (§ 12031(a)(2)(C)); and (3) possession of a loaded firearm for which he was not the registered owner (§ 12031(a)(2)(F)). The trial court imposed a sentence on the section 12021(a)(1) count and stayed the sentences on the other two firearm counts pursuant to section 654. Ramon argues the trial court should have struck either the possession of a loaded firearm by a member of a criminal street gang count or the possession of a loaded firearm for which he was not the registered owner count.

■ Ramon does not argue that one of these counts was a lesser included offense to the other. Although section 954 permits the accusatory pleading to charge " 'different statements of the same offense,' " and also permits a conviction for " 'any number of the offenses charged,' " "there is an exception to the general rule permitting multiple convictions. 'Although the reason for the rule is unclear, this court has long held that multiple convictions may *not* be based on necessarily included offenses. [Citations.]' [Citation.] ' "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." [Citations.]' [Citation.]" (*People v. Ortega* (1998) 19 Cal.4th 686, 692 [80 Cal.Rptr.2d 489, 968 P.2d 48], overruled on other grounds in *People v. Reed* (2006) 38 Cal.4th 1224, 1230–1231 [45 Cal.Rptr.3d 353, 137 P.3d 184].)

■ Neither offense on which Ramon focuses is necessarily included in the other. A required element of a violation of section 12031(a)(2)(C) is that the defendant be a member of a criminal street gang. This is not an element of a violation of section 12031(a)(2)(F). Similarly, a required element of a violation of section 12031(a)(2)(F) is that the defendant not be the registered owner of the firearm. A defendant could violate section 12031(a)(2)(C) even if he were the registered owner of the firearm. Accordingly, neither violation is necessarily committed when committing the other offense.

The People focus on this difference in urging us to reject Ramon's argument. In making this argument, the People miss Ramon's point. He argues that the two convictions cannot both stand because section 12031(a)(2)(C) and (F) are not separate offenses, but instead are different penalty provisions for the same offense.

This issue was thoroughly addressed in *People v. Muhammad* (2007) 157 Cal.App.4th 484 [68 Cal.Rptr.3d 695] (*Muhammad*) where the defendant was

convicted of four counts of stalking[2] based on the same set of facts.[3] The appellate court began by explaining the issue.

"The heart of the parties' dispute focuses on whether subdivisions (a), (b), and (c)(1) and (2) of section 646.9 define separate substantive offenses, each with its own distinct elements. Defendant argues they do not and, instead, merely define the one substantive offense of stalking, with enhancements or alternative punishments for that offense. Thus, he argues his convictions on counts 1 through 3 must be vacated. The People respond that these subdivisions describe separate substantive offenses, and, for this reason, section 954 permits multiple convictions. . . .

"In resolving this dispute, we find *People v. Kelley* (1997) 52 Cal.App.4th 568 [60 Cal.Rptr.2d 653] instructive. In *Kelley*, the defendant, who previously had been prosecuted and convicted of misdemeanor contempt (§ 166, subd. (a)(4)) for violating a restraining order, was charged with stalking in violation of the same restraining order under section 646.9[, subd.] (b). (*Kelley*, at pp. 574–575.) As *Kelley* explained, the double jeopardy clause of the Fifth Amendment prohibits a person from being prosecuted twice for the same offense or any included offense, and the test is whether each offense contains an element the other does not. (*Kelley*, at p. 576.) The defendant argued that his prosecution for stalking violated the prohibition against double jeopardy because the crime of stalking in violation of a restraining order contains all the elements of the crime of contempt for violating that restraining order. (*Ibid.*) In rejecting the argument, the court stated, 'In making this argument, [the defendant] incorrectly assumes section 646.9 defines the crime of stalking in violation of a restraining order. The section merely defines stalking. The provisions relating to the violation of a restraining order do not define a crime. They merely create a punishment enhancement.

---

[2] Section 646.9, subdivisions (a) through (c) states: "(a) Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking, punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison. [¶] (b) Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years. [¶] (c)(1) Every person who, after having been convicted of a felony under Section 273.5, 273.6, or 422, commits a violation of subdivision (a) shall be punished by imprisonment in a county jail for not more than one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment, or by imprisonment in the state prison for two, three, or five years. [¶] (2) Every person who, after having been convicted of a felony under subdivision (a), commits a violation of this section shall be punished by imprisonment in the state prison for two, three, or five years."

[3] The convictions were for violating section 646.9, subdivisions (a), (b), and (c)(1), (2).

As such, they are not to be considered in the double jeopardy analysis. [Citation.] Absent these provisions, the crimes are distinct and the constitutional prohibition against double jeopardy was not violated.' (*Kelley*, at p. 576, fn. omitted; [citations].)" (*Muhammad, supra*, 157 Cal.App.4th at pp. 490–491, fn. omitted.)

The appellate court held that section 646.9, subdivisions (a), (b) and (c) do not create separate offenses, but instead create different punishment enhancements. To bolster this conclusion, the court relied on the definition of the relevant terms.

"A substantive 'crime or public offense' is defined as 'an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: [¶] 1. Death; [¶] 2. Imprisonment; [¶] 3. Fine; [¶] 4. Removal from office; or, [¶] 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State.' [Citation.]

" 'By definition, a sentence enhancement is "an additional term of imprisonment added to the base term." ' [Citations.]

" ' "[A] penalty provision prescribes an added penalty to be imposed when the offense is committed under specified circumstances. A penalty provision is separate from the underlying offense and does not set forth elements of the offense or a greater degree of the offense charged. [Citations.]" ' [Citations.]

"Despite language to the contrary in *Kelley*, we conclude that subdivisions (b), and (c)(1) and (2) of section 646.9 are not sentence enhancements; they clearly do not add an additional term of imprisonment to the base term.

■ " 'The California Supreme Court has recognized, however, that statutory provisions which are not "enhancements" in the strict sense are nevertheless "penalty provisions" as opposed to substantive offenses where they are "separate from the underlying offense and do[] not set forth elements of the offense or a greater degree of the offense charged. [Citations.]" ' [Citations.] Phrased slightly differently, a penalty provision does not define a substantive offense, but ' " 'focus[es] on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves.' [Citation.]" [Citations.]' [Citation.] [¶] . . . [¶]

"Similarly, subdivisions (b), and (c)(1) and (2) of section 646.9 do not define a substantive offense. Subdivision (a) sets out the elements of the crime of stalking. Subdivisions (b) and (c), after referring to subdivision (a),

focus on ' " 'the criminal history of the defendant which is not present for all such . . . perpetrators and which justifies a higher penalty than that prescribed for [stalking].' [Citation.]" [Citations.]' [Citations.] The effect of subdivisions (b) and (c) is to establish a higher base term for stalking when it is committed by a defendant with a particular criminal history. Moreover, the jury does not consider the truth of these penalty facts until it has reached a verdict on the substantive stalking offense under subdivision (a). [Citation.]

"We conclude that subdivisions (b), and (c)(1) and (2) of section 646.9 are penalty provisions triggered when the offense of stalking as defined in subdivision (a) of that section is committed by a person with a specified history of misconduct." (*Muhammad, supra*, 157 Cal.App.4th at pp. 492–494, fns. omitted.)

Section 12031 clearly falls within the definition of a penalty provision provided by *Muhammad*. Section 12031, subdivision (a)(1) sets forth the elements of the crime of carrying a concealed firearm: "when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory."

■ Subdivision (a)(2) of section 12031 establishes the penalty for violation of subdivision (a)(1) of section 12031, depending on the circumstances surrounding the offense or the offender. If the defendant has a previous felony conviction, or a previous conviction of this chapter, a violation of subdivision (a)(1) is a felony. (*Id.*, subd. (a)(2)(A).) If the firearm is stolen, then a violation of subdivision (a)(1) is a felony. (*Id.*, subd. (a)(2)(B).) If the defendant is a member of a criminal street gang, a violation of subdivision (a)(1) is a felony. (*Id.*, subd. (a)(2)(C).) Where the defendant does not lawfully possess the firearm, or is prohibited from possessing a firearm by statute, a violation of subdivision (a)(1) is a felony. (*Id.*, subd. (a)(2)(D).) If the defendant has certain specified prior convictions, then a violation of subdivision (a)(1) is a wobbler, punishable as either a felony or a misdemeanor. (*Id.*, subd. (a)(2)(E).) If the defendant is not the registered owner of the firearm, then a violation of subdivision (a)(1) is a wobbler, punishable as either a felony or a misdemeanor. (*Id.*, subd. (a)(2)(F).) If the defendant does not fit within any of the above categories, the crime is punishable as a misdemeanor. (*Id.*, subd. (a)(2)(G).)

■ Therefore, a violation of section 12031, subdivision (a)(1) is a crime, and subdivision (a)(2)(A) through (G) of section 12031 simply establishes the penalty based on the circumstances of the offense and the offender. The trial court erred, therefore, when it entered judgment for violation of section 12031(a)(2)(C) and (F). Under the facts of this case, Ramon violated section

12031, subdivision (a)(1) only once and can be convicted only once of this crime. We will, therefore, order the conviction for violating section 12031(a)(2)(F) vacated and affirm the conviction for violating section 12031(a)(2)(C).

## DISPOSITION

The enhancement based on the jury's finding that Ramon violated section 186.22(b)(1) is vacated. The conviction for violation of section 12031(a)(2)(F) is reversed. The remaining convictions are affirmed. The matter is remanded to the trial court for resentencing.

Levy, Acting P. J., and Gomes, J., concurred.