Filed 4/24/13  P. v. Hebrard CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B239269 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA377622) |
| v. | |
| LEANDRE HEBRARD, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Schuit, Judge.  Affirmed.

Sarah A. Stockwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

LeAndre Hebrard appeals from his conviction, following a jury trial, of second degree robbery. He contends (1) the trial court erred in allowing a gang expert to testify about gang members leaving a gang, (2) there was insufficient evidence to support the gang enhancements, and (3) the court erred in sentencing him to separate consecutive terms for the firearm and gang enhancements. Finding no error, we affirm.

## STATEMENT OF THE CASE

A jury found appellant guilty of second degree robbery (Pen. Code, § 211).[1] It found true the allegation that appellant personally used a firearm to commit the robbery (§ 12022.53, subd. (b)), that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that the crime was committed for the benefit of a criminal street gang with the intent to promote, further, and assist the gang (§ 186.22, subd. (b)(1)).

The trial court sentenced appellant to a total of 23 years in prison, consisting of the midterm of three years for the robbery conviction, plus 10 years consecutive for the personal use firearm enhancement, and 10 years consecutive for the gang enhancement. The one-year firearm enhancement under section 12022, subdivision (a)(1) was imposed and stayed, pursuant to section 654. Appellant timely appealed.

## STATEMENT OF THE FACTS

In October 2010, Kristopher Sallico owned and operated Jimmy's Cleaners on Martin Luther King Boulevard in Los Angeles. Sallico testified that on October 27, 2010, at around 2:00 p.m., he was robbed by appellant and codefendant Andre

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

2

McClelland.[2]  Sallico knew the two men as "Touche" and "4-Leaf," respectively. He had spoken with the two men "numerous" times, mainly to advise them to become productive citizens.  When appellant and McClelland entered his store, Sallico approached them.  McClelland said to Sallico, "Pops, give me the money." Sallico replied, "Are you joking?"  Appellant, who was standing about three feet behind McClelland, lifted his shirt and showed Sallico the handle of a handgun. Sallico became frightened and walked to the cash register.  He took out the money and gave it to McClelland.  Appellant and McClelland walked out, got into a car, and drove away.

After the men left, Sallico tried to contact his son but could not reach him. About an hour later, he called the police.  When the police arrived, Sallico told an officer that he had been robbed in his store by two Black men who were Rolling 40's gang members.  He identified the first man as "4-Leaf" and the second man as "Touche" and "LeAndre."  Later that day, Sallico positively identified appellant and McClelland as the robbers in a six-pack photographic lineup.  He also identified appellant and McClelland as the robbers at the preliminary hearing and at trial.

At trial, Sallico testified he believed that appellant and McClelland were affiliated with a gang.  The area surrounding his store was a gang area, and gang members had repeatedly "tagg[ed]" his door and walls.  Sallico testified that two months after the robbery, he sold the business because he "wanted to get [his] family out of the environment."  He also testified his son was friends with the robbers.  He stated he was "unhappy with my son being affiliated with gangs," and that he wanted to get his son away from "the gang and the lifestyle."

---

[2]     The jury also convicted McClelland of second degree robbery.

Los Angeles Police Department Officer Guillermo Espinoza, the prosecution's gang expert, testified that the Rolling 40's Neighborhood Crips is a criminal street gang with about 850 members. Gang members have particular symbols, clothing, and tattoos they use to identify themselves. The primary activities of the gang include murder, shootings, robberies, assault, and drug sales. Officer Espinoza testified that gang members need to put in "work" -- committing crimes for the gang -- to "keep their name or status elevated." Officer Espinoza stated that Sallico's store was in Rolling 40's territory, and Sallico was the father of a Rolling 40's gang member. Officer Espinoza knew appellant as an active Rolling 40's gang member. He had had "numerous contacts" with appellant and had arrested him before. Officer Espinoza also knew McClelland as a self-admitted Rolling 40's gang member who had gang tattoos and was known by his gang moniker of "4-Leaf."

Given a hypothetical fact pattern based on the facts of this case, Officer Espinoza opined that the robbery was committed for the benefit of a criminal street gang, the Rolling 40's. He explained that gang members commit robberies to generate income and to instill fear in the community. The fear deters victims from reporting the crimes to the police. It also helps the gang recruit new members.

On cross-examination, McClelland's counsel elicited testimony from Officer Espinoza that it was "unusual" for a member of a gang to go out and rob the business of the father of a fellow gang member. Appellant's counsel asked Officer Espinoza what the police policy was to determine when a person was no longer considered an "active" gang member. Officer Espinoza stated there was no written policy, but that it would include whether the gang member had a normal job and was living away from the gang's territory. Counsel then elicited testimony that

4

appellant was living with his mother in an area outside the Rolling 40's gang territory.

On redirect examination, over defense objections, Officer Espinoza testified that gang members looked down on members who attempt to leave the gang. These members could be disciplined, beaten up, or killed. When a gang member leaves the gang, his family may also be targeted.

## DISCUSSION

Appellant contends (1) the court erred in admitting, over defense objection, testimony by the prosecution's gang expert about the possible repercussions suffered by members attempting to leave the gang, (2) there was insufficient evidence to support the gang enhancement allegation, and (3) the court improperly imposed both a firearm personal use enhancement and a gang enhancement.

A.    *Gang Expert Testimony*

Appellant contends the trial court abused its discretion in allowing Officer Espinoza to opine about the possible repercussions that a member attempting to leave a gang could suffer. He contends the testimony should have been excluded under Evidence Code section 352 because it was irrelevant and speculative, as there was no evidence that Sallico's son was attempting to leave the Rolling 40's gang. We disagree.

Here, the gang expert's testimony about the repercussions facing gang members who attempt to leave was relevant to explain or rebut adverse testimony and inferences developed during cross-examination. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 746 [redirect examination's "'principal purposes are to explain or rebut adverse testimony or inferences developed on cross-examination . . . .'"].) On cross-examination, McClelland's attorney had elicited testimony from Officer Espinoza that it was unusual for gang members to target

5

the business of the father of another gang member, suggesting that the robbery was not gang-related. Sallico had testified that he wanted his son to leave the gang, and had encouraged appellant to become a productive citizen. Officer Espinoza's testimony on redirect tended to show that the robbery was intended to intimidate Sallico and to discourage him from advising gang members to leave the gang. Thus, the testimony was relevant to appellant's motive and intent in committing the robbery. (*People v. Williams* (1997) 16 Cal.4th 153, 193.) In addition, while cross-examining the officer, appellant's attorney had elicited testimony from which it could be inferred that appellant was no longer an active member of the Rolling 40's gang, as he was no longer living in the gang's territory at the time of the crime. Evidence tending to show the disincentives for leaving a gang was relevant to rebut this inference. In short, the trial court did not abuse its discretion in allowing the gang expert's testimony on redirect examination.

In any event, any error was harmless beyond a reasonable doubt. Sallico positively identified appellant as the robber. Even had the challenged testimony been excluded, the evidence, as discussed below, was sufficient to establish that the robbery was committed for the benefit of a criminal street gang. Thus, it is not reasonably probable that a more favorable result would have occurred absent the alleged error. (*People v. Cole* (2004) 33 Cal.4th 1158, 1195.)

B.     *Sufficiency of the Evidence*

Appellant contends the evidence was insufficient to support the gang enhancement allegation. In reviewing the sufficiency of the evidence supporting a special allegation, this court examines "'the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable

doubt' [citation], 'presum[ing] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence' [citation]." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 161.) Expert testimony may be used to prove the elements of a gang enhancement allegation. (See, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 621; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332-1333.)

Here, the jury found true the allegation that appellant committed the robbery for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C). "The section 186.22(b)(1) enhancement requires the jury to find that the crime was committed for the benefit of a criminal street gang and with the specific intent to promote the criminal street gang." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 849 (*Ramon*).) We conclude that substantial evidence supports the jury's findings that the crime was committed for the benefit of the Rolling 40's gang, and that appellant had the specific intent to promote the gang when he robbed Sallico. The crime was committed by acknowledged Rolling 40's gang members in territory claimed by the gang. The crime victim told the police he had been robbed by Rolling 40's gang members. Officer Espinoza opined that the robbery increased the community's fear of the Rolling 40's gang, and that the gang would benefit from community members' fear and reluctance to report crimes committed by gang members. As our Supreme Court has observed, "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1)." (*People v. Albillar* (2010) 51 Cal.4th 47, 63; accord *People v. Gardeley* (1996) 14 Cal.4th 605, 619 [from expert testimony that assault was "'classic'" gang activity that frightened residents and secured gang's drug-

7

dealing stronghold in the area, jury could reasonably conclude charged offense was committed for benefit of gang and with specific intent of promoting its criminal activities under section 186.22, subd. (b)(1)]; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 351, 354 [reasonable jury could infer from expert testimony that violent crimes increased respect for gang and intimidated neighborhood residents, and from other evidence in record that murder was committed with specific intent to promote gang's criminal activities]; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930- 931 [jury could reasonably infer crime was gang-related from expert testimony coupled with other evidence].)

Appellant's reliance on *Ramon* is misplaced. In that case, the defendant was convicted of possession of a stolen vehicle and possession of an unregistered firearm. When asked how these crimes would benefit a criminal street gang, a gang expert testified that two gang members being together in a stolen vehicle with an unregistered firearm benefitted their gang because they could commit crimes that would be in furtherance of the gang. (*Ramon*, *supra*, 175 Cal.App.4th at pp. 847-848.) The appellate court found this evidence insufficient to establish that the defendants had the specific intent to promote, further, or assist criminal conduct by other gang members. (*Id*. at p. 851.) *Ramon* is distinguishable from the instant case because in *Ramon*, there was no evidence the crime victim knew her vehicle had been stolen by gang members and thus no permissible inference that they had intended to intimidate her. (*Id*. at pp. 846-847.) Here, Sallico knew he was being robbed by gang members; it was one of the first things he reported to the police, and he was sufficiently intimidated to move his family away from the gang's territory. In short, there was sufficient evidence to support the gang enhancements.

C.    *Sentencing Error*

Appellant contends one of the two 10-year enhancements (the section 12022.53 personal use firearm enhancement and the 186.22 gang enhancement) must be stricken, as the imposition of two enhancements in the instant matter violates section 1170.1, subdivision (f), as interpreted by the California Supreme Court in *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*).  Specifically, appellant contends that section 1170.1, subdivision (f) prohibits the imposition of both enhancements, where the 10-year gang enhancement was imposed due to the personal use of a firearm during a crime.  We conclude that both enhancements were properly imposed.

Section 1170.1, subdivision (f) provides in pertinent part:  "When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. . . ."  Thus, in *Rodriguez*, the California Supreme Court held that a defendant cannot be subjected to a gang enhancement under section 186.22 and a firearm enhancement under section 12022.5, subdivision (a).  (*Rodriguez, supra*, 47 Cal.4th at p. 504.)  Appellant, however, was subjected to a firearm personal use enhancement under section 12022.53.  Subdivision (e)(2) of that section provides:  "An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense."  In *People v. Brookfield* (2009) 47 Cal.4th 583, the Supreme Court explained that under section 12022.53, subdivision (e)(2), "[a] defendant who *personally* uses or discharges a firearm in the commission of a gang-related offense is subject to *both*

9

the increased punishment provided for in section 186.22 *and* the increased punishment provided for in section 12022.53." (*Id*. at p. 590.)  Because section 12022.53, subdivision (e)(2) is the more specific statute, it prevails over the conflicting language in section 1170.1, subdivision (f).  (*People v. Robinson* (2012) 208 Cal.App.4th 232, 259-260.)  Appellant personally used a firearm to commit the robbery when he showed Sallico a handgun during the crime.  Thus, appellant was properly subject to both the firearm enhancement and the gang enhancement because he personally used a handgun to commit the gang-related crime.  The court did not err in imposing the two enhancements.

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**




MANELLA, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.