Filed 11/6/15  P. v. Bettencourt CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ZACHARY BETTENCOURT,<br><br>        Defendant and Appellant. | H040438<br>(Santa Clara County<br>Super. Ct. No. C1089619) |

## I.        INTRODUCTION

Defendant William Zachary Bettencourt pleaded no contest to conspiracy to commit a violation of Vehicle Code section 1808.45 [unauthorized disclosure of Department of Motor Vehicles (DMV) records].  (Pen. Code, § 182, subd. (a)(1).)[1] Defendant also admitted that he had two prior felony convictions that qualified as strikes.  (§§ 667, subds. (b)-(i), 1170.12.)  After a court trial, the trial court found that defendant committed the conspiracy for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(A).)  The trial court struck the prior convictions and sentenced defendant to prison to the upper term of three years for the conspiracy, with a consecutive four-year upper term for the gang allegation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant challenges the sufficiency of the evidence to support the gang allegation. Defendant contends there was insufficient evidence that the conspiracy was "committed for the benefit of, at the direction of, or in association with any criminal street gang" (§ 186.22, subd. (b)(1)) and insufficient evidence that he acted with "the specific intent to promote, further, or assist in any criminal conduct by gang members" (*ibid.*). Defendant also contends there was insufficient evidence that his gang—the Hell's Angels—was a "criminal street gang" within the meaning of section 186.22, subdivision (f), which requires that one of the gang's primary activities is the commission of certain enumerated offenses and that the members of the gang "individually or collectively engage in or have engaged in a pattern of criminal gang activity." We will reverse the judgment and direct the trial court to vacate the true finding on the gang allegation.

## II.     BACKGROUND

### A.     *Factual Background*

On September 17, 2010, police executed a search warrant at defendant's residence. The police found "a significant amount of DMV information regarding various individuals" in defendant's possession.

Defendant had a broken leg at the time of the search, and he was in a wheelchair. Police found a 9-millimeter pistol with a loaded magazine and a "large amount of Hells Angel[s] gang paraphernalia." Defendant "freely admitted" that he was a " 'full patch' " member of the Hells Angels.

A cell phone found at defendant's residence contained a number of text messages to and from Santa Clara Police Officer Clay Rojas. Some of the text messages indicated that Rojas owed defendant money. In other text messages, defendant requested that Rojas run warrants checks and obtain information from the DMV on certain vehicles and individuals. Rojas provided that information to defendant in text messages.

2

One exchange of text messages occurred on August 16, 2010. Defendant texted Rojas, "$?" Rojas texted back, "Aug 27 for sure. Sorry bro. . . ." Defendant texted Rojas that he was having surgery on his leg soon due to a motorcycle accident.

On August 19, 2010, defendant and Rojas again exchanged text messages. Defendant indicated that his surgery was over, and he asked Rojas to run his name and "check status." Rojas later texted back, "Clear."

Also on August 19, 2010, defendant exchanged text messages with someone police later determined to be Viviana Rodriguez. Rodriguez provided a license plate number and asked defendant to "get info on who it's registered [to]." Defendant then texted Rojas, asking him to "run" that license plate. Rojas indicated he would do so.

On August 20, 2010, Rodriguez sent defendant a text message correcting the license plate number. Defendant then sent the new number to Rojas via text message. Rojas texted defendant that the license plate belonged to a 2005 Chrysler registered to a Sean Walsh in Sacramento. Rojas indicated he would provide an address the next day. Defendant then provided the information to Rodriguez via text message. Defendant asked if the name meant anything. Rodriguez said no and asked defendant for advice. Defendant suggested she call him, and he asked, "Baby mama dram[a]?" Rodriguez replied, "Lol kinda beyond that" and indicated she would call defendant.

On September 1, 2010, defendant texted Rojas, indicated he wanted to meet in Santa Clara. Rojas agreed and indicated he was concerned about being seen. Rojas indicated that defendant should park in a specific parking lot. Rojas said he would "jump in" to defendant's car. He texted, "Then we drive." Defendant indicated he had someone driving him, noting, "but he is good." Rojas responded, "Wut?? Come on dude…" Rojas also asked, "Is he a member? U trust?" Defendant responded, "Trust me." Defendant also responded, "YES!!! I would never put u in a cross. I just can't drive cause of my leg." Rojas texted back, "I trust u. U trust him?" Defendant wrote, "Yes. He is a stand up guy 4sure." Rojas wrote, "Fuck dude. U know I'm all about

3

operational security!  Meaning I don't trust dick.  I'm putting it out there on this one. I trust u."  Defendant wrote, "Trust me.  It is all good."  Defendant soon indicated, in a text message, that he had arrived at the meeting spot.

On September 2, 2010, defendant sent Rojas a text message with a woman's name and date of birth.  Defendant explained, "That's the girl my friend is asking about over the child custody crap," and he asked Rojas to check her record for "dirt."  Rojas wrote back that the woman had "an old DUI from 05' and a bunch of vehicle code violations," but an otherwise clean record.  Defendant forwarded that information to Rodriguez.

As noted above, a search warrant was executed at defendant's residence on September 17, 2010.  Defendant was arrested on October 14, 2010.

### B.      *Procedural Background*

Defendant, Rojas, and Rodriguez were charged with conspiracy to commit a violation of Vehicle Code section 1808.45 [unauthorized disclosure of DMV records]. (§ 182, subd. (a)(1).)  The complaint alleged two overt acts:  (1) Rojas electronically transmitted confidential information to defendant, and (2) defendant electronically transmitted confidential information to Rodriguez.  Both overt acts were alleged to have occurred between August 19, 2010 and September 3, 2010.  The complaint alleged that defendant had two prior convictions that qualified as strikes.  (§§ 667, subds. (b)-(i), 1170.12.)

On June 19, 2013, the prosecutor moved to amend the complaint to add an allegation that defendant committed the conspiracy for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1)(A).)  Also on that date, defendant pleaded no contest to the conspiracy charge (admitting the first overt act only) and admitted the strike allegations.

A court trial was held on the gang allegation.  The prosecutor submitted 91 pages of documentary evidence, and defendant's trial counsel submitted a letter brief arguing that there was (1) insufficient evidence to support a finding that the conspiracy was committed for the benefit of, at the direction of, or in association with a criminal street

4

gang and (2) insufficient evidence to support a finding that he acted with the specific intent to promote, further, or assist in any criminal conduct by gang members. (See § 186.22, subd. (b)(1).)

### C. Evidence Submitted to Prove Gang Allegation

The prosecution's documentary evidence included a detailed description of the investigation prepared by Santa Clara Police Sergeant Brian Gilbert. In that document, Sergeant Gilbert stated that gangs such as the Hells Angels often attempt to obtain confidential or restricted information from law enforcement. "The disclosure of such information provides a direct benefit to the gang, their reputation and their activities." He explained that gangs such as the Hells Angels "utilize such confidential information to conduct more complete background checks on associates or prospective members to avoid penetration by law enforcement or their informants who would jeopardize their illegal enterprises." Sergeant Gilbert further explained, "Witnesses and victims are less likely to cooperate with law enforcement if they believe the gang can find their location by obtaining confidential information and the dissemination of such information seriously jeopardizes ongoing criminal investigations and prosecutions and poses significant risks to law enforcement and prosecution personnel." Finally, he explained that the Hells Angels are "well known for violence and intimidation," such that "[h]aving access to, and/or causing persons to believe they have access to, confidential information, benefits the gang as persons who might provide information regarding their criminal activities are dissuaded from doing so based upon the belief that persons loyal to the gang would be able to find them or their families." Moreover, having access to such information would increase defendant's own "status within the gang."

The prosecution's evidence also included the affidavit of Sergeant Dan Livingston, which was submitted in connection with a search following a battery defendant committed in June of 2010. Livingston had contacted over 250 gang members and affiliates, had attended gang trainings that included training on the Hells Angels, and

had been involved in at least 100 gang-related investigations. Sergeant Livingston alleged that he knew "from training and experience that the Hells Angels Outlaw Motorcycle Gang is a gang as defined in section 186.22 PC," specifying, "the gang has three or more members, the gang has a common identifying sign/symbol, and its members have collectively or individually engaged in a pattern of criminal gang activity as defined in section 186.22(e) PC." Sergeant Livingston described the structure of the Hells Angels. He stated that the Hells Angels "commit assaults and other acts of violence and threats of violence in order to bolster and support the criminal purposes of the organization and enhance the criminal dominance of the gang and status of its members." He knew that the Hells Angels "engage in witness intimidation in order to protect their members from prosecution."

An "opinion document" written by Department of Justice training coordinator Jorge Gil-Blanco was also submitted by the prosecution. Gil-Blanco had attended training on the Hells Angels, and he had conducted and reviewed investigations involving the Hells Angels. He had previously testified as an expert on the Hells Angels. According to Gil-Blanco, "the Hells Angels Outlaw Motorcycle Gang is primarily involved in the sales, possession for sales, and manufacturing of controlled substances, robberies, burglaries, assaults, assault with a deadly weapon, weapons violations, witness intimidation, and murder." Gil-Blanco further opined that defendant was "acting for the benefit, and in furtherance of the Hells Angels Outlaw Motorcycle Gang" in this case. This opinion was "based on historical evidence seized from other Hells Angels Outlaw Motorcycle Gang members, as well as the evidence established in this case."

Gil-Blanco's curriculum vitae described his "Specialized Experience in Investigation of Outlaw Motorcycle Gangs." Gil-Blanco described a number of investigations that he had been involved in or consulted on. For instance, in August of 2011, he had monitored the service of a search warrant at the Sonoma Hells Angels' clubhouse as part of an investigation into an assault in Lake County. He had also

6

monitored the service of a search warrant at the Dago Hells Angels' clubhouse as part of an investigation into a number of crimes in San Diego.

The prosecution's evidence also included documents from the Ventura County prosecutions of Martin Minoru Kada, Scott Robert Sutton, and James David Ivans. Kada had been charged with transportation of methamphetamine, transportation of hydrocodone, and being under the influence of a controlled substance. He had pleaded guilty to transportation of methamphetamine. Sutton had been charged with possession of a firearm by a felon, possession of ammunition by a felony, carrying a loaded firearm, and evading a police officer. He had pleaded guilty to possession of a firearm by a felon. Ivans had been charged with transportation of a controlled substance, and he had pleaded guilty to that offense.

### D. *Arguments and Trial Court Finding*

In his letter brief, defendant's trial counsel argued that defendant's membership in the Hells Angels was not related to the charged offense. He asserted that there was no evidence that a member of the Hells Angels had directed defendant to commit the crime and that there was no evidence Rojas or Rodriguez were members of the Hells Angels. He further asserted that the evidence defendant obtained from Rojas benefited only Rodriguez and that there was no evidence the crime also benefitted the Hells Angels. Finally, he asserted that the evidence showed that defendant's intent was to assist Rodriguez and that the evidence did not support a finding that defendant committed the crime with the intent of promoting, furthering, or assisting members of the Hells Angels.

At the hearing, the prosecutor referred to the information provided by Sergeant Gilbert regarding how access to confidential information through a law enforcement officer "benefits the Hells Angels as a criminal enterprise" by giving the gang "more credibility, more fear on the street" and by dissuading witnesses from coming forward. The prosecutor conceded that there was no evidence defendant's crime was committed "at the direction of" of the gang, but he argued that the trial court could find

7

that the crime was committed in "association with" the gang because the text messages indicated that a member of the Hells Angels drove defendant to the meeting with Rojas. The prosecutor argued that this evidence also showed that defendant had the specific intent to further criminal gang activity.

Defendant's trial counsel argued that the evidence indicated defendant and Rojas had a friendship "outside" of the conspiracy. He argued that the benefit described by the prosecutor was "an amorphous one." He argued that the evidence showed defendant acted "for his own benefit," i.e., "to curry favour with a young attractive female," and that "the purpose behind that has nothing to do [with] the Hells Angel[s] Motorcycle Club."

The trial court found the gang allegation true, specifying that its finding was based on "the availability of [the DMV] information generally, to have an intimidating factor using the information and gaining specific preserved information, confidential information that is not otherwise noted to promote the objects of the gang." The trial court further found that the gang allegation was supported by the fact that defendant had "another person with him at the meeting," i.e., "an association type of activity that would promote the gang and done so with the specific intent to promote the gang."

### E.      Sentencing

Defendant filed a request for dismissal of the two strike allegations. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) The trial court struck the prior conviction allegations and sentenced defendant to prison to the upper term of three years for the conspiracy, with a consecutive four-year upper term for the gang allegation.[2]

---

[2] The probation report reflects that Rojas was sentenced to a two-year county jail term and that the charges against Rodriguez were dismissed.

## III.   DISCUSSION

Defendant contends there was insufficient evidence to support the trial court's true finding on the gang allegation.  Defendant challenges four of the trial court's underlying findings:  (1) that the conspiracy was "committed for the benefit of, at the direction of, or in association with any criminal street gang" (§ 186.22, subd. (b)(1)); (2) that defendant acted with "the specific intent to promote, further, or assist in any criminal conduct by gang members" (*ibid.*); (3) that one of the gang's primary activities is the commission of certain enumerated offenses (*id.*, subds. (e) & (f)); and (4) that the members of the gang "individually or collectively engage in or have engaged in a pattern of criminal gang activity" (*id.*, subd. (f)).

### A.    *Standard of Review*

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.  [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).) " 'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.  [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' [Citations.]" (*People v. Rios* (2013) 222 Cal.App.4th 542, 564 (*Rios*).)

### B.    *Analysis*

We first address defendant's claim that the evidence was insufficient to support the trial court's finding that defendant acted with "the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1).)

9

Defendant relies on a trio of cases in which the evidence was insufficient to support a finding that the defendant acted with the requisite specific intent to promote, further, or assist in criminal conduct by gang members: *Rios, supra,* 222 Cal.App.4th 542, *In re Daniel C.* (2011) 195 Cal.App.4th 1350 (*Daniel C.*), and *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*).

In *Rios, supra,* 222 Cal.App.4th 542, the defendant was convicted of vehicle theft and carrying a loaded firearm in a vehicle, with gang allegations found true as to both counts. The defendant had been driving a stolen vehicle by himself, and in the vehicle, police found a loaded gun and gang indicia. (*Id.* at pp. 547-548.) This court found insufficient evidence to support the trial court's finding that the defendant acted with the specific intent required by section 186.22, subdivision (b)(1). There was no evidence the defendant had "acted in concert with other gang members," no evidence that he had been directed to steal the vehicle by another gang member, and no evidence that the defendant was transporting the loaded gun so that a gang member could commit a crime. (*Rios, supra,* at p. 572.) Nor did testimony from a gang expert provide substantial evidence supporting the specific intent element of the gang enhancements. The gang expert had testified that guns benefit gang members because guns are "status symbols" that can be shared with other gang members or used to scare people and dissuade witnesses from testifying. (*Id.* at p. 553.) This testimony was insufficient to support the specific intent finding with respect to the carrying a loaded firearm charge because "there was no evidence that the gun defendant transported was brandished or shown to anyone or used to intimidate persons in the community." (*Id.* at p. 573.) The gang expert had also testified that a stolen vehicle is often used by gang members to commit crimes so the vehicle cannot be traced back to the gang member. (*Id.* at p. 553.) This testimony was insufficient to support the specific intent finding with respect to the vehicle theft charge because there was no evidence that the defendant had used the stolen vehicle "to pick up one or more fleeing gang members," no evidence "that he intended to use the car to

10

commit another gang crime separate and apart from the vehicle theft," and no evidence of "any driveby shootings or attempted driveby shootings that night in Salinas." (*Id.* at p. 574.)

In *Daniel C.*, the juvenile court found that the minor committed robbery, and it found true a gang allegation. The minor and some companions—all gang members or gang affiliates—had been inside a liquor store together, but the minor's companions had left the store prior to the minor's commission of the robbery, which involved assaulting a store employee with a liquor bottle. (*Daniel C., supra,* 195 Cal.App.4th at p. 1353.) On appeal, the *Daniel C.* court found insufficient evidence to support the specific intent element of the gang allegation. The court noted that there was no evidence the minor had "acted in concert with his companions," since they had left the store prior to the robbery and did not assist the minor in assaulting the store employee. (*Id.* at p. 1361.) There was also no evidence that the minor's companions "even saw what happened in the store after they left," and no evidence that the store employee was aware that the minor or his companions were gang members or gang affiliates. (*Ibid.*)

In *Ramon*, the defendant was driving a stolen vehicle with a gun under the driver's seat. Ramon and his passenger were members of the same gang, and they were in their gang's territory when police stopped them. (*Ramon, supra,* 175 Cal.App.4th at p. 847.) Ramon was convicted of receiving a stolen vehicle and various firearm offenses, with gang allegations found true as to all of the offenses. (*Id.* at p. 846.) At trial, a gang expert had testified that the crime was committed for the benefit of the defendant's gang and that the crime was intended to promote the gang, "because the gun and the stolen vehicle could be used to facilitate the commission of a crime." (*Id.* at p. 849.) The appellate court reversed the gang allegation, finding that the expert opinion "could not provide substantial evidence to support the jury's finding" because "[t]here were no facts from which the expert could discern whether Ramon and [the passenger] were acting on their own behalf . . . or were acting on behalf of the [gang]." (*Id.* at p. 851.) The *Ramon*

11

court rejected the notion that the specific intent element could be based on the fact that the defendant was accompanied by another gang member during the commission of the crimes. (*Ibid.*)

In the instant case, there is no evidence that defendant was acting "in concert with other gang members" when he committed the charged offense. (*Rios, supra,* 222 Cal.App.4th at p. 572; see also *Daniel C., supra,* 195 Cal.App.4th at p. 1361.) The record does not contain any evidence that either Rojas or Rodriguez were members of the Hells Angels. Although the evidence arguably supported a finding that a member of the Hells Angels gang drove defendant to a meeting with Rojas, there was no evidence that any criminal conduct occurred during that meeting, and the driver was not charged as part of the conspiracy. With respect to the criminal conduct—that is, the transmission of DMV information—there is no evidence of involvement by any other gang members. There is no evidence that any other gang members directed defendant to commit the charged offense and no evidence that defendant committed the charged offense to enable another gang member to commit a crime. (See *Rios, supra,* at p. 572.) Indeed, there was no evidence that the driver or any other gang members knew that defendant was engaged in the charged criminal conduct. (See *Daniel C., supra,* at p. 1361.)

The documents containing the gang experts' opinions also did not provide substantial evidence supporting a finding that defendant had the "specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Sergeant Gilbert testified that members of the Hells Angels use confidential information they obtain from law enforcement in various ways, such as to conduct background checks on potential members, and that the very access to such information benefits the gang by dissuading witnesses from coming forward. However, no evidence in the record supports a finding that defendant intended for the DMV information he obtained from Rojas during the conspiracy to be used by any other gang members, and there was no evidence that defendant intended his access to the DMV

12

information to promote, further, or assist criminal conduct by other gang members. Defendant obtained the DMV information from Rojas at the behest of Rodriguez, who wanted the DMV information for her own personal purposes. As noted previously, there was no evidence that Rodriguez was a gang member. In sum, the evidence here was insufficient to permit the gang experts to "construct an opinion" about defendant's specific intent. (*Ramon, supra,* 175 Cal.App.4th at p. 852.) Their opinions, therefore, "cannot constitute substantial evidence to support the [trial court's] finding on the gang enhancement." (*Ibid.*)

The Attorney General relies on *Albillar, supra,* 51 Cal.4th 47, in which the California Supreme Court noted, "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id.* at p. 68.) In the present case, even assuming that the evidence supported a finding that the person who drove defendant to the meeting with Rojas was a fellow Hells Angels member, there was no evidence that any criminal conduct occurred during that meeting, and the driver was not charged as part of the conspiracy. Thus, there was no evidence that defendant acted with the specific intent to promote, further, or assist any criminal conduct by a gang member. (Compare *ibid.* ["there was ample evidence that defendants intended to attack Amanda M., that they assisted each other in raping her, and that they were each members of the criminal street gang"].)

We conclude that there was insufficient evidence to support the trial court's finding that defendant acted with "the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)) when he committed the charged offense. We need not reach defendant's other arguments concerning the gang allegation.

13

## IV.    DISPOSITION

The judgment is reversed.  The trial court is directed to vacate the true finding on the gang allegation, Penal Code section 186.22, subdivision (b)(1)(A).

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:



_____
ELIA, ACTING P.J.




_____
MIHARA, J.