Filed 7/30/14  P. v. Garcia CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LARRY STEVE GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B250216<br>(Super. Ct. No. VA128816)<br>(Los Angeles County) |

A jury found Larry Steve Garcia guilty of attempted robbery.  (Pen. Code, §§ 211, 664.)[1]  The jury also found a gang allegation to be true (§ 186.22, subd. (b)(1)(B)) and that the victim was a paraplegic (§ 667.9, subd. (a)).  Garcia admitted that he suffered a prior prison term.  (§ 667.5, subd (b).)  He received an aggregate sentence of nine years in prison.

On appeal, Garcia contends the gang allegation is not supported by substantial evidence, attempted robbery is not a predicate offense to a section 667.9 enhancement, and the trial court erred in denying his *Faretta* motions.

We strike the section 667.9 sentence enhancement.  In all other respects we affirm.

---

[1] All statutory references are to the Penal Code.

FACTS

On October 29, 2012, at approximately 5:40 p.m., Diego Ramirez was crossing the street in his wheelchair. A white Cadillac abruptly stopped in the middle of the road, blocking Ramirez's path. Garcia got out of the car and asked Ramirez what he had on him. Ramirez replied, "Nothing." Garcia attempted to grab Ramirez's cellphone and Bluetooth earpiece from him. A struggle ensued. Ramirez pushed Garcia away with his hands. Garcia hit Ramirez in the head with a blunt object. Ramirez began to bleed from the wound. Garcia got back in his car and left. It took four staples to close Ramirez's head wound.

Ramirez had known Garcia for over five years and identified him as his assailant. He told the police his assailant was Larry Garcia, known as "Sneaks," from the Jardin 13 gang.

*Gang Evidence*

Los Angeles County Deputy Sheriff Steven Lopez testified as a gang expert. Lopez testified that Garcia is an admitted member of the Jardin 13 gang. The primary activities of the gang include assault, assault with a deadly weapon, possession of narcotics for personal use and sale, vandalism, murder, burglaries and other thefts. Garcia committed the crimes against Ramirez in Jardin 13 territory.

Lopez testified the attempted robbery was committed for the benefit of, at the direction of, and in association with, a criminal street gang. When asked for the basis of his opinion, Lopez testified:

"The act was a violent act, it was committed in a public area; it was a residential street, in plain view; daylight hours. The victim knew the defendant from prior contacts based on his own statements to me; recognized him, named him, knew his moniker, knew what gang he was from. The crime was committed in Jardin 13 territory, which is a safe zone for the defendant. He knows that he has the protection, the backing of the gang. He's asserting control of his turf by committing the crime in his territory.

2

"Also, the fact that the victim was a paraplegic in a wheelchair, and by his own admission was defenseless, it shows that nobody in the community is safe, so by committing that -- the violent act of attempt robbery, which included an assault, it shows the propensity of the gang for violence, and it instills fear in the community. It can also instill fear in other gang members that this suspect is a violent person.

"But . . . also, any monetary gain from committing a crime by a gang member -- he has to contribute to his gang, so he has to pay dues to his gang. His gang also has to pay dues to the Mexican mafia. Money that the gang collects, they use to buy firearms, to commit assault, robberies, murder of other gang members, also to expand their territory.

"They also use the money they receive from pawning off stolen property, selling stolen property to buy narcotics, which they in turn sell to increase income."

DISCUSSION

I.

Garcia contends the gang enhancement is not supported by substantial evidence.

Section 186.22, subdivision (b)(1) provides for a sentence enhancement of five years for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ."

In reviewing the sufficiency of the evidence we view the evidence in a light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity. (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.) We have no power on appeal to reweigh the evidence or

3

judge the credibility of witnesses. (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.) We must affirm if we determine that any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt. (*People v. Johnson*, *supra*, at p. 578.)

Garcia argues there is no evidence he committed the attempted robbery for the benefit of, at the direction of, or in association with any criminal street gang. He points out that he acted alone; no other gang members were nearby; he did not flash gang signs or shout gang names; he never said this is my territory; and he never indicated in any manner that the attempted robbery was for the benefit of a gang.

But the attempted robbery took place in the middle of a public street; it occurred in Jardin 13 territory; Garcia made no attempt to hide his identity; and Ramirez knew Garcia well from previous encounters. Garcia was using his association with his gang and its reputation for violence to protect him from prosecution for his crime. Thus the jury could reasonably conclude the crime was committed in association with a criminal street gang. There is no requirement that other gang members be nearby at the time the crime is committed.

In addition, the jury could conclude from the brazen manner in which the crime took place that it was committed for the benefit of the gang. It increased the gang's reputation for violence and thus its control over its territory.

The jury could also conclude Garcia had the specific intent to promote, further, or assist criminal conduct by gang members. As a gang member, Garcia would know that openly committing the crime would increase the gang's reputation for violence. The reputation would intimidate people living in its territory, making it easier to commit other crimes.

Garcia points out that the prosecutor did not ask Lopez hypothetical questions. Instead, the prosecutor asked Lopez directly whether the crime was committed for the benefit of a street gang and whether Garcia had the specific intent

4

to benefit the gang. Garcia cites *People v. Vang* (2011) 52 Cal.4th 1038, 1048, for the proposition that it is impermissible for an expert to testify that a specific person had a specific intent.

In *Vang*, our Supreme Court held that an expert could not testify directly whether a specific defendant acted for a gang purpose. (*People v. Vang*, *supra*, 52 Cal.4th at p. 1048.) That is because the expert has no personal knowledge whether the defendant committed the crime, and if so, why. (*Ibid.*) An expert may, however, answer a hypothetical question, based on the prosecution's evidence, whether if such a crime had occurred it would have been for gang purposes. (*Ibid.*) That the expert's opinion embraces an ultimate question to be decided by the trier of fact does not make it objectionable. (*Ibid.*)

It is true that the prosecution should have asked questions calling for an expert opinion in the form of hypotheticals. But there is nothing in the record to suggest that the form of the question would have made any difference in the outcome of the trial. Any error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 837.) If Garcia is suggesting that Lopez's testimony cannot constitute substantial evidence because the prosecutor did not state the question in a hypothetical form, he cites no such authority.

Garcia's reliance on *People v. Ramon* (2009) 175 Cal.App.4th 843, is misplaced. There gang member defendants were in possession of an unregistered firearm in a stolen truck. A gang expert testified the crimes were for the benefit of a gang because gang members could use a stolen truck and an unregistered firearm to commit other crimes. The Court of Appeal reversed a true finding on a gang enhancement. The court held there were no facts from which an expert could discern whether the defendants were acting on their own or on behalf of their gang. The expert's testimony amounted to nothing more than speculation. (*Id.*, at p. 851.)

But in *Ramon*, the defendants did not commit the underling crimes in an open brazen manner. They did not take the truck from its owner in the middle of

5

the street, striking her on the head in front of anyone who would care to see. There was not the open and notorious violence or intimidation that would indicate gang involvement. Here Lopez's testimony was based on the manner in which the crime was committed. It was not based on speculation.

## II.

Garcia contends the trial court erred in imposing a sentence enhancement under section 667.9, subdivision (a).

Section 667.9, subdivision (a) provides a one-year sentence enhancement for crimes specified in subdivision (c) against a person who is a paraplegic. The People concede that attempted robbery is not a crime specified in subdivision (c). The enhancement must be stricken and the sentence modified.

## III.

Garcia contends the trial court erred in denying his motions to represent himself.

A defendant in a criminal case has the right to represent himself at trial. (*Faretta v. California* (1975) 422 U.S. 806.) *Faretta* motions must be timely and unequivocal. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.) A motion is equivocal where the defendant tries to manipulate the proceedings by switching between requests for counsel and self-representation, or where such actions are the result of whim and frustration. (*Ibid.*) Motions made on the eve of trial are untimely, and should rarely be granted. (*People v. Lynch* (2010) 50 Cal.4th 693, 722.)

Where a *Faretta* motion is untimely, self-representation is no longer a right, but is subject to the trial court's discretion. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1365) The trial court must consider the totality of the circumstances including the quality of counsel's representation, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the

6

proceedings, and the disruption or delay that might reasonably be expected from the granting of such a motion. (*People v. Windham* (1977) 19 Cal.3d 121, 128.)

### (a) Pretrial Faretta Motion

At a pretrial conference Garcia declared he was having a "conflict of interest" with his counsel. He asked that his counsel be relieved. Garcia said he would like to make a bail reduction motion because his counsel was not doing it. The court held a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. The trial court denied Garcia's *Marsden* motion. Garcia told the court he would like to make a motion pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. Garcia's counsel expressed doubt about his ability to complete the *Pitchess* motion prior to trial. Garcia refused to waive time. Nevertheless, counsel agreed to try to complete the *Pitchess* motion. Garcia's counsel renewed the motion for bail reduction. The trial court denied the motion.

At a trial readiness conference the court set trial for the next day. Defense counsel told the court that he believed a *Pitchess* motion was unwarranted. He also said that because Garcia disagreed with him on the *Pitchess* motion, Garcia wants to represent himself at trial. The court agreed with counsel that there was no basis for a *Pitchess* motion. The court asked Garcia if he would be ready for trial the next day. Garcia initially stated, "I have no idea." After consulting with his counsel off the record Garcia stated, "I don't believe I'll be ready tomorrow." The court denied the *Faretta* motion stating, "I believe [the motion is] a response to the fact that your motion was denied and you did not have a *Pitchess* motion granted . . . ."

### (b) Post-trial Faretta Motions

After the jury verdict, the trial court was taking Garcia's admission to a prior conviction. Garcia told the court that he wanted to represent himself in a motion for a new trial. Eventually, he acquiesced in having counsel file the motion.

7

Finally, during sentencing Garcia stated, "I want to go pro per as of this moment." Garcia said that his counsel refused to call a witness who would have testified he was at work at the time of the attempted robbery and that his counsel "smells like alcohol." The trial court denied the motion.

Here each of Garcia's *Faretta* motions was untimely. The first motion was the day before trial, the second motion was while admitting to a prior conviction and the third motion was during sentencing. Thus the trial court had the discretion to deny the motions.

Garcia made the first motion because his counsel determined that there was no basis for a *Pitchess* motion. The trial court agreed with counsel and Garcia does not dispute that determination on appeal. Thus there was no basis for Garcia's *Faretta* motion. The trial court found that Garcia made the motion out of frustration. The trial court did not abuse its discretion in denying the motion.

Garcia's second *Faretta* motion was abandoned when he acquiesced to his counsel filing a motion for a new trial.

Garcia made his third *Faretta* motion during sentencing. He complained that his counsel refused to call an alibi witness and smelled of alcohol. There are many legitimate reasons why counsel might not call a witness. The trial court was able to observe counsel's performance before, during and after trial. It did not find counsel's representation was inadequate or that counsel was in any way impaired. There was simply no basis for the motion. The trial court did not abuse its discretion.

## DISPOSITION

The one-year sentence enhancement imposed pursuant to section 667.9 is stricken. We direct the superior court to amend the abstract of judgment to reflect this modification and to forward a copy of the amended abstract of judgment

8

to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

9

Robert J. Higa, Judge

Superior Court County of Los Angeles
_____

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, for Plaintiff and Respondent.