Filed 3/19/15  P. v. Valdivia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROGELIO GOMEZ VALDIVIA,<br><br>    Defendant and Appellant. | F067239<br><br>(Super. Ct. No. BF145432A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. John S. Somers, Judge.

Hayes H. Gable, III, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Rogelio Gomez Valdivia was convicted of possession of a firearm by a felon, and possession of a firearm by an active member of a criminal street gang. (Pen. Code, §§ 29800, subd. (a)(1) & 25400, subd. (c)(3).)[1] Two enhancements were found true by the jury. As to the first count, the jury found true the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang pursuant to the provisions of section 186.22, subdivision (b)(1) (hereafter section 186.22(b)(1)). As to both counts, the jury found true the allegation Valdivia had served a prior prison term within the meaning of section 667.5, subdivision (b).

Valdivia argues the section 186.22(b)(1) enhancement is not supported by substantial evidence, and the trial court erred in admitting testimony that established Valdivia's companion at the time he was arrested was a member of a criminal street gang. We find no merit to either contention and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

*The Information*

The information charged Valdivia with being a felon in possession of a firearm (§ 29800, subd. (a)(1)), possession of a firearm while an active participant in a criminal street gang (§ 25400, subd. (c)(3)), and presenting a false identity to a police officer (§ 148.9, subd. (a)). The false identity count was dismissed by the People at the conclusion of the testimony. The information also alleged the enhancements identified in the introduction.

*Prosecution Case*

Bakersfield Police Officer Jesse Perez testified that on the date in question he participated in a traffic stop of a vehicle in which Valdivia was an occupant. When Valdivia lifted his arms to permit the officers to conduct a patdown search for officer safety, Perez observed a firearm in Valdivia's pocket. Perez gained possession of the

---

[1] All statutory references are to the Penal Code unless otherwise stated.

firearm without incident. After examination, Perez determined there was no ammunition in the firearm, but if it contained ammunition it would fire normally. When asked, Valdivia admitted he was a member of a Norteño criminal street gang, and he carried the firearm because he had had problems with members of Sureño criminal street gangs. Valdivia stated he knew the firearm was not loaded, but if confronted he would pull it out in an attempt to intimidate other gang members, and then flee the area. No bullets were found in a search of the vehicle that were the same caliber as the gun recovered from Valdivia.

The gang expert presented by the People was Bakersfield Police Officer Nathan Anderberg, a member of the Directed Policing Unit, which investigates gang crimes and gathers intelligence involving gangs. He testified generally about Norteño and Sureño criminal street gangs, including their rivalry, symbols, and tattoos. He also explained that, of the two, the Sureño criminal street gang is primarily found in the city of Bakersfield. The only subset of the Norteño criminal street gang of which Anderberg is aware in Bakersfield is the West Side Norteños.

Anderberg testified the primary criminal activities of the Norteño criminal street gang are weapon violations, auto theft, narcotic sales, burglary, and theft related offenses. He also testified to several predicate crimes, the first being the conviction of Albert Jackson, an admitted member of the Norteño criminal street gang, for possession of a firearm by a member of a criminal street gang. The second involved Rudy Delgado, who was the driver of the vehicle in which Valdivia was riding at the time of his arrest. [2] Delgado had been convicted of possession of a stolen firearm. Anderberg opined Delgado was an active member of the Norteño criminal street gang at the time of his arrest. The third crime involved Ruben Delgado, Rudy Delgado's brother. This crime

---

**2**      Delgado was charged with various crimes in this case, but entered into a plea agreement before the testimony began.

3.

involved an assault with a firearm by several gang members. Ruben Delgado was convicted of assault with a deadly weapon with a street gang enhancement. Two other individuals were also convicted of the same crimes. Finally, Anderberg opined the Norteño criminal street gang was engaged in a pattern of criminal activity.

Anderberg found significant Valdivia's statement to the arresting officers that Valdivia showed the firearm to Delgado before he got into the vehicle. Based on his experience with gang members, Anderberg testified that if a gang member is in possession of a firearm, it is common for that gang member to inform the other gang members of that fact before they enter into a vehicle together. The reason armed gang members do this is to permit the unarmed gang members to decide if they want to ride with the armed gang member, thereby exposing themselves to arrest. This knowledge also allows the unarmed gang members to plan on how they will react if a traffic stop is initiated by police officers, or how they will react if they are confronted by rival gang members. It is considered disrespectful if the armed gang member does not inform the other passengers in the vehicle that he is armed. The same analysis applies when one gang member is carrying illegal drugs.

Anderberg also testified about Delgado's gang affiliation. Anderberg reviewed his prior booking intake sheets, which all stated Delgado claimed to be a Norteño. Delgado's tattoos also indicated membership in the Norteño criminal street gang. A brief review of various street contacts between Delgado and police officers showed that in each contact Delgado admitted being a member of the West Side Norteño criminal street gang.

Anderberg also reviewed various reports of offenses in which Delgado was involved. The first involved the arrest of another suspect at a party, presumably a party of Norteño criminal street gang members. Delgado was present wearing a red shirt and red hat. The second involved various suspects breaking into a vehicle and removing items. Delgado was identified as one of the suspects. He was wearing a red shirt at the

time.  Based on all of this information, Anderberg opined Delgado was a member of the West Side Norteños criminal street gang.

Regarding Valdivia's gang affiliation, Anderberg reviewed booking sheets and the current offense report.  He also spoke with Romel Bautista and Travis Brewer, who were formerly members of the Delano Police Department, the city in which Valdivia lived.  In 14 of the booking sheets reviewed by Anderberg, Valdivia claimed Norteño and asked to be kept away from Sureños.  Based on this information, Anderberg opined that Valdivia was a member of the Norteño criminal street gang.

In response to a hypothetical question based on the facts of this case, Anderberg opined the crime of carrying a firearm was committed for the benefit of the Norteño criminal street gang because it could be used for both offensive and defensive purposes.  The fact the gun was not loaded did not change Anderberg's opinion.  The firearm would also benefit the gang because it would enhance the reputation of the gang because gang members were in rival territory, thus disrespecting the rival gang.

*Defense Case*

Valdivia presented a single witness, Fernando Jara, an expert on criminal street gangs.  Jara provided an extensive description of the Norteño and Sureño criminal street gangs, as well as extensive explanation of the gang lifestyle.  Based on his review of the information in this case, he opined that Valdivia was not a member of the Norteño criminal street gang.  Jara based his opinion on the fact Valdivia did not have an identifiable clique, or group, to which he belonged, he did not have a criminal history of assaultive type crimes, he did not have any tattoos, he did not wear the Norteño color of red, he did not have the typical appearance one who associates with Norteños (style of dress, hairstyle, etc.), and he was unsophisticated from a gang standpoint considering his age and the fact he carried an unloaded firearm.  Jara testified that carrying an unloaded firearm was "shameful," as was his failure to identify a clique to which he belongs.  Both of these items demonstrated a lack of pride in his neighborhood, which is unacceptable in

the gang culture. Jara explained Valdivia's responses to the officer's questions as explaining that he is from a northern neighborhood, since he was from Delano.

*Closing Argument*

Defense counsel admitted Valdivia had suffered a prior felony conviction and was carrying a weapon when the traffic stop was made. She focused her argument on the criminal street gang enhancements, arguing Valdivia was not a member of the Norteño criminal street gang, and he carried the firearm only for protection. The prosecutor argued Valdivia admitted he was a member of the Norteño criminal street gang, and the gun benefited the gang.

*Verdict and Sentencing*

The jury found Valdivia guilty of the charged crimes, and found the section 186.22(b)(1) enhancement true. The trial court sentenced Valdivia to a total term of six years on count one (upper term plus three years for the gang enhancement). The sentence on count two was stayed pursuant to section 654.

**DISCUSSION**

**I.     Substantial Evidence**

For the jury to find the section 186.22(b)(1) enhancement true, the prosecution was required to prove, as relevant here, (1) Valdivia committed the crime for the benefit of, or in association with, a criminal street gang, and (2) Valdivia had the specific intent to assist, further, or promote criminal conduct by gang members. (CALCRIM No. 1401.) Valdivia argues there was not substantial evidence that he acted with the specific intent to assist, further, or promote criminal conduct by gang members.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in

6.

support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

The issue presented here is not uncommon, and several published decisions have addressed the same or similar issues. The cases cited by the parties provide a representative sample, so we will provide a brief summary of those cases. We will address the cases in chronological order, beginning with the oldest case, *People v. Gardeley* (1996) 14 Cal.4th 605 (*Gardeley*), one of the first Supreme Court cases to address the California Street Terrorism Enforcement and Prevention Act (the STEP Act). (§ 186.20 et seq.)

As relevant here, the jury found Gardeley guilty of various crimes and found true the allegation the crimes were committed for the benefit of a criminal street gang within the meaning of section 186.22(b)(1). The Supreme Court began by observing imposition of the enhancement required the prosecution to prove "the crime for which the defendant was convicted had been 'committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.' [Citation.] In addition, the prosecution must prove that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting *two or more* of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period. [Citation.]" (*Gardeley*, *supra*, 14 Cal.4th at pp. 616–617.)

The issues addressed by the Supreme Court were (1) the propriety of using expert testimony to establish these elements, (2) whether the predicate offenses must have been committed for the benefit of, at the direction of, or in association with the gang, and (3) whether substantial evidence was presented to prove the pattern of gang activity element of the enhancement. The court concluded properly presented expert testimony could be used to prove the various elements of the enhancement, the predicate offenses do not have to be gang related, and there was substantial evidence, primarily through the expert testimony presented by the prosecution, to establish a pattern of gang activity as that element is statutorily defined. (*Gardeley*, *supra*, 14 Cal.4th at pp. 617–626.) These holdings are not an issue in this appeal.

The next case in chronological order is *People v. Morales* (2003) 112 Cal.App.4th 1176 (*Morales*). Morales was convicted of possession of a firearm after having suffered a prior felony conviction, two counts of robbery, and one count of attempted robbery. In addition, the jury found true the section 186.22(b)(1) enhancement on each count. The robberies occurred when Morales and two other codefendants robbed at gunpoint three occupants of a house, murdering one of the occupants. The two codefendants were found guilty of murder, although Morales was not found guilty on this count (he was in a different room of the house when the murder occurred). The People's expert identified all three codefendants as members of the same criminal street gang, and, in response to a hypothetical question, opined the crime was committed in association with other gang members, and would benefit the gang by increasing the gang's notoriety among rival gangs and the public. (*Morales*, *supra*, at p. 1197.) As to the second element of the enhancement, that the crime was committed with the specific intent to promote, further, or assist in any criminal conduct by gang members, the appellate court noted the jury could have concluded Morales had the specific intent to assist in criminal conduct by gang members because he participated in the robbery with two other gang members. (*Id.* at p. 1198.)

In *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*), the defendant was convicted of various crimes after he was found driving a stolen vehicle, and an unregistered firearm was found in the vehicle. Ramon was a member of a criminal street gang, and another member of the same gang was with Ramon when police stopped the stolen vehicle. The jury also found true the allegation that Ramon was a member of a criminal street gang, and found the crime was committed for the benefit of a criminal street gang pursuant to section 186.22(b)(1). Ramon argued to this court there was insufficient evidence to support the section 186.22(b)(1) enhancement.

The People presented evidence through their expert witness that Ramon was a member of a criminal street gang, he was stopped and arrested in that gang's territory, and the numerous crimes that were the primary activity of the gang included car theft, narcotic sales, and robberies. The expert opined that having a stolen vehicle would enable gang members to commit various crimes and, since the vehicle could not be traced to the gang member, it could be disposed of, thus assisting the gang member in avoiding arrest. A similar response was provided to a question about possession of an unregistered firearm. The expert also opined the vehicle and firearm could be used to spread fear and intimidation in the gang's territory. The expert ultimately opined, in response to a hypothetical question, that possession of the stolen vehicle and the unregistered firearm would benefit and further the gang by providing a means to commit crimes, i.e. the vehicle and firearm were the tools needed by the gang to commit crimes.

Our opinion noted there was no evidence to support the section 186.22(b)(1) enhancement other than the expert's opinion, and there was little factual support for the opinion. The expert relied on the fact (1) Ramon possessed a stolen vehicle, (2) he possessed an unregistered firearm, (3) he was arrested in gang territory, (4) he was a gang member, and (5) he was arrested with another gang member. We concluded the expert based his conclusions on speculation about the mindset (either the motive or knowledge) of the defendant. "Speculation is not substantial evidence. (*People v. Perez* (1992) 2

9.

Cal.4th 1117, 1133.) "'To be sufficient, evidence must of course be substantial. It is such only if it '"reasonably inspires confidence and is of 'solid value.'"' By definition, 'substantial evidence' requires *evidence* and not mere speculation. In any given case, one 'may *speculate* about any number of scenarios that may have occurred .… A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.… A finding of fact must be an inference drawn from evidence rather than … a mere speculation as to probabilities without evidence.'"' (*Ibid*.)" (*Ramon*, *supra*, 175 Cal.App.4th at p. 851.) We concluded the record provided no factual foundation for the expert's opinion testimony. Because there were no objective facts to suggest the crime was gang related, the expert's opinion lacked foundation and, by itself, was insufficient to establish Ramon acted with the specific intent to promote, further, or assist in criminal conduct by gang members. (*Id*. at p. 853.)

The next cited case is *People v. Ochoa* (2009) 179 Cal.App.4th 650 (*Ochoa*). In this case, the victim was sitting in a vehicle in a parking lot while his mother was inside a restaurant. Ochoa approached, pointed a shotgun at the victim, and ordered the victim out of the vehicle. Ochoa then drove away in the vehicle. Ochoa did not give any objective indication that he was a member of a criminal street gang. Nonetheless, the victim testified because Ochoa was Mexican and had short hair, he believed Ochoa may have been a gang member.

The People's expert witness testified that Ochoa was a member of a criminal street gang, but acknowledged that all crimes committed by gang members are not committed for the benefit of the gang. A second expert witness testified that he began his analysis with the fact Ochoa was a gang member. He then acknowledged Ochoa did not do anything to suggest the crime was gang related, but the victim nonetheless believed Ochoa was a gang member. The witness explained that oftentimes gang members do not announce their gang affiliation to avoid providing the police with leads to identify the perpetrator. The witness also observed car thefts were the "'signature'" crime of Ochoa's

10.

gang. (*Ochoa*, *supra*. 179 Cal.App.4th at p. 655.) The witness testified the crime may have been committed to enable Ochoa to retaliate against someone else because Ochoa had taken the vehicle to another person's house and then brandished the shotgun. Based on this information, the expert opined the crime was committed for the benefit of his gang. He noted possession of a stolen vehicle could be used to transport gang members or narcotics, or could be used to commit other crimes. The gang could also sell the vehicle for a profit. The crime could also raise Ochoa's status within the gang, and the gang's reputation within the community. The witness admitted there was no evidence the vehicle was used to transport gang members, and no indication the defendant had claimed responsibility for the crime on behalf of his gang.

As in *Ramon*, the appellate court in *Ochoa* concluded there was insufficient evidence the crime was committed for the benefit of the gang. The appellate court began by noting that a "gang expert's testimony alone is insufficient to find an offense gang related. [Citation.] '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' [Citation.]" (*Ochoa*, *supra*, 179 Cal.App.4th at p. 657.) The appellate court concluded there was nothing in the manner the crime was committed to suggest a gang connection, there was no evidence only gang members committed the crime of carjacking, and there was no evidence to support the expert's opinion suggesting the crime was gang related. "The [expert's] testimony, as to how [the] defendant's crimes would benefit [the criminal street gang], was based solely on speculation, not evidence. An appellate court cannot affirm a conviction based on speculation, conjecture, guesswork, or supposition. [Citations.]" (*Id*. at p. 663.)

*Albillar*, *supra*, 51 Cal.4th 47, the next case cited by the parties, involved the rape of a teenage girl by three gang members. In addition to convictions for various crimes related to the rape, the defendants were convicted of being active members in a criminal

street gang (§ 186.22, subd. (a)), and the jury found true the section 186.22(b)(1) enhancement. (*Albillar*, *supra*, at pp. 50–51.) The relevant issue before the Supreme Court was whether there was substantial evidence to support the section 186.22(b)(1) enhancement.

The defendants challenged the sufficiency of the evidence for each of the elements of the section 186.22(b)(1) enhancement. The Supreme Court began by noting the first element of the enhancement, that the crime was committed in association with or for the benefit of a criminal street gang, was intended to ensure that increased punishment was imposed only if the crime is gang related. The Supreme Court also observed that not every crime committed by gang members is gang related. (*Albillar*, *supra*, 51 Cal.4th at p. 60.) The Supreme Court found sufficient evidence of the first element because the three gang members acted in association with each other when they raped the victim. As the People's expert explained, each defendant relied on the cooperation of the other defendants to rape the victim, each defendant assisted the other defendants in raping the victim, and each defendant relied on the gang loyalty of the other defendants to ensure no one would testify against the other defendants. (*Id*. at p. 61.) The defendants also relied on their gang membership to instill fear in the victim to prevent her from reporting the crime. (*Ibid*.) "In short, [the] defendants' conduct exceeded that which was necessary to establish that the offenses were committed in concert. [The] [d]efendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together. They relied on the gang's internal code to ensure that none of them would cooperate with the police, and on the gang's reputation to ensure that the victim did not contact the police. We therefore find substantial evidence that [the] defendants came together *as gang members* to attack [the victim] and, thus, that they committed these crimes in association with the gang. [Citations.]" (*Id*. at pp. 61–62.)

The first element of the enhancement was also supported by evidence that the crime benefited the defendants' gang.  The Supreme Court observed the victim knew at least two of the defendants were gang members, and the People's expert explained that the crime "'is reported as not three individual named Defendants conducting a rape, but members of [the defendants' gang] conducting a rape, and that goes out in the community by way of mainstream media or by way of word of mouth.  That is elevating [the defendants' gang's] reputation to be a violent, aggressive gang that stops at nothing and does not care for anyone's humanity.'"  (*Albillar*, *supra*, 51 Cal.4th at p. 63.)  "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of … a[] criminal street gang' within the meaning of section 186.22(b)(1). [Citations.]"  (*Ibid.*)

The defendants attacked the second element of the enhancement, that the defendants acted with the specific intent to promote, further, or assist in criminal conduct by gang members, with various arguments that attempted to impose additional requirements into section 186.22(b)(1).  The Supreme Court rejected the arguments, concluding (1) this element does not impose a requirement that the defendant promote, further, or assist felonious criminal *gang-related* conduct, (2) this element does not require the defendant have the specific intent to promote, further, or assist a *gang-related* crime, and (3) the defendant need not have the specific intent to aid the *gang*.  (*Albillar*, *supra*, 51 Cal.4th at pp. 66–67.)  It then summarized its conclusion, "In sum, if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members.  Here, there was ample evidence that [the] defendants intended to attack [the victim], that they assisted each other in raping her, and that they were each members of the criminal street gang.  Accordingly, there was substantial evidence that [the]

defendants acted with the specific intent to promote, further, or assist gang members in that criminal conduct." (*Id*. at p. 68.)

The final Supreme Court case cited by the parties is *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), which addressed the issue of whether a defendant, acting alone, could violate section 186.22, subdivision (a), the crime of active participation in a criminal street gang. The defendant was convicted of robbery, and two gang experts testified the defendant was a member of a criminal street gang, and the crime was committed for the benefit of a criminal street gang. The jury found the defendant guilty of the robbery, and the substantive crime of gang participation. The jury also found true a section 186.22(b)(1) enhancement. The trial court granted the defendant's motion for new trial on the gang enhancement, concluding there was not substantial evidence to support the jury's true finding.

The issue raised by the defendant focused on the third element of the gang participation crime, whether the defendant willfully promoted, furthered, or assisted in any felonious criminal conduct by members of the criminal street gang in which he was an active participant. (*Rodriguez*, *supra*, 55 Cal.4th at at pp. 1130–1131.) The Supreme Court concluded the plain language of section 186.22, subdivision (a) establishes that to violate the statute a defendant must promote, further or assist in felonious criminal conduct by members of the gang, i.e. two or more gang members acting together and, therefore, a gang member committing felonious criminal conduct by himself cannot violate the statute. (*Rodriguez*, *supra*, at pp. 1131–1139.)

In responding to the arguments of the Attorney General, the Supreme Court also discussed the section 186.22(b)(1) enhancement. "Section 186.22(a) and section 186.22(b)(1) strike at different things. The enhancement under section 186.22(b)(1) punishes gang-related conduct, i.e., felonies committed with the specific intent to benefit, further, or promote the gang. [Citation.] However, '[n]ot every crime committed by gang members is related to a gang.' [Citation.] As such, with

section 186.22(a), the Legislature sought to punish gang members who acted *in concert* with other gang members in committing a felony regardless of whether such felony was gang-related.  [Citation.]"  (*Rodriguez, supra*, 55 Cal.4th at p. 1138.)  The Supreme Court also noted, in response to another argument, that a lone gang member who commits a felony could be punished not only for the felony, but also by application of the section 186.22(b)(1) enhancement if the prosecution could prove the elements of the enhancement.  (*Rodriguez, supra*, at pp. 1138–1139.)

The final case cited by the parties is *People v. Rios* (2013) 222 Cal.App.4th 542 (*Rios*).  Rios was convicted of vehicle theft, and carrying a loaded firearm in a vehicle. The jury also found true a section 186.22(b)(1) enhancement.  As relevant to this case, the appellate court held the section 186.22(b)(1) enhancement was not supported by substantial evidence.

The appellate court focused on whether there was sufficient evidence to support the specific intent prong of the enhancement, i.e. was there sufficient evidence the defendant acted with the specific intent to promote, further, or assist in any criminal conduct by gang members?  The appellate court's analysis is helpful, so we quote it at length.

> "Since we hold that a lone actor may be subject to the gang enhancement, we must determine whether, absent evidence that [the] defendant acted in concert with other gang members, there was substantial evidence that he committed the offenses with the specific intent to promote, further, or assist in any criminal conduct by gang members.  For example, the prosecution could have presented evidence that another gang member had directed [the] defendant to steal a car to use in a robbery, or that [the] defendant was transporting the loaded gun from one gang member to another to use in a robbery or driveby shooting.  There was no such evidence.  Unlike [*People v. Muniz* (1993) 16 Cal.App.4th 1083], where the defendant admitted to the investigating officer that he was preparing to commit a retaliatory driveby shooting when the officers saw him holding a loaded semiautomatic rifle, [the] defendant never admitted that he stole the car or transported the gun to promote, further, or assist in any criminal conduct by gang members.

15.

"Under *Albillar* and [*People v. Vang* (2011) 52 Cal.4th 1038] the jury could rely on [the gang expert's] responses to hypothetical questions as circumstantial evidence of [the] defendant's specific intent to promote, further, or assist in any criminal conduct by gang members to support their findings on the gang enhancement as long as those questions were based on the evidence presented at trial. [Citations.] At trial in this case, the prosecutor asked [the gang expert] hypothetical questions related to the specific intent prong of the gang enhancement (§ 186.22(b)(1)). First, regarding the firearm offense, she asked, 'In your opinion, does a gang member being in possession of a firearm promote, further or assist felonious conduct by gang members?' [The gang expert] responded that it did. For example, when a Norteño gang member is shot, the gang's response is 'to shoot at a rival within an hour.... [T]he Sureños know this. So it boosts their reputation, it boosts the fear in the community.' In response to leading questions, [the gang expert] added that gang members use firearms to protect their drug sales territory and other gang members, and that having a firearm makes it easier for gang members to commit crimes. The prosecutor also asked, 'We talked about the effect that … a gang member having a firearm has on the community. Does that [effect] promote, further or assist criminal conduct by gang members?' [The gang expert] responded that it did because '[t]hey know that it stops individuals from coming out and being witnesses to these crimes.' However, unlike *Albillar*, where there was evidence that persons associated with the defendants attempted to intimidate the victim, there was no evidence that the gun [the] defendant transported was brandished or shown to anyone or used to intimidate persons in the community. [The investigating officer] testified that it was hidden under the front passenger seat and was not visible from outside the car. As in [*In re Daniel C.* (2014) 195 Cal.App.4th 1350], there was no evidence that any victim in this case or anyone in the local community knew [the] defendant was a gang member, was affiliated with a gang, or was acting with a gang purpose.

"The only facts that the prosecution asked the expert to consider in the hypothetical were (1) the person was a gang member and (2) he possessed a gun. In our view this was insufficient to impose the gang enhancement (§ 186.22(b)(1)) on the carrying a loaded firearm in a vehicle count [citation]. Although *Albillar* instructs that the prosecution may rely on the charged offense as the criminal conduct supporting the enhancement when the defendant acts in concert with others, in a case such as this, where the defendant acts alone, the combination of the charged offense and gang membership alone is insufficient to support an inference on the specific intent prong of the gang enhancement. Otherwise, the gang enhancement would be used merely to punish gang membership. As the court stated in

*Rodriguez*, '[m]ere active and knowing participation in a criminal street gang is not a crime.' [Citation.] We therefore hold that the expert testimony in response to the hypothetical in this case was insufficient to support an inference that [the] defendant carried the gun in the vehicle with the specific intent required for the gang enhancement.

"Second, regarding the vehicle theft [citation], the prosecutor asked, 'Does a gang member being in possession of a stolen vehicle promote, further or assist criminal conduct by gang members in any way?' [The gang expert] testified that it did. He explained that when law enforcement officers set up a perimeter to apprehend gang members that are running from the officers because they have committed crimes, the gang members will use a cell phone and call for someone to pick them up and get them out of the area. He also testified that a stolen vehicle 'helps assist other gang crimes' and stated 'the majority of time when driveby shootings are done, they are done by cars that have been stolen.' In this case, although the officers examined [the] defendant's phone, there was no evidence that he had used the [stolen vehicle] to pick up one or more fleeing gang members, that he intended to use the car to commit another gang crime separate and apart from the vehicle theft, or that there were any driveby shootings or attempted driveby shootings that night in Salinas. In our view, this evidence suffers from the same weakness as the testimony on the firearm count since the hypothetical asked the expert to consider only two facts: (1) possession of a stolen vehicle (2) by a gang member. Following the reasoning set forth above, we hold that the expert testimony in response to the hypothetical about a stolen vehicle was insufficient to support an inference that [the] defendant stole the car with the specific intent to promote, further, or assist in any criminal conduct by gang members (§ 186.22(b)(1)).

"And like [*In re Frank S.* (2006) 141 Cal.App.4th 1192] and *Ochoa*, there was no evidence that [the] defendant was in Norteño territory or rival gang territory when he stole the car; that he called out a gang name, displayed gang signs or otherwise stated his gang affiliation; or that the victims of the car theft were rival gang members or saw his tattoos or gang clothing. Here, although there was evidence that auto thefts and illegal gun possession were among the primary activities of the Norteño gang in Salinas, that evidence alone was insufficient to support the inference that [the] defendant stole the [vehicle] and possessed the gun with the specific intent to promote, further, or assist in any criminal conduct by gang members.

"For all these reasons, we hold that there was insufficient evidence to support the specific intent prong of the gang enhancement (§ 186.22(b)(1)) on both the vehicle theft [citation] and the carrying a loaded firearm in a vehicle [citation]) counts." (*Rios*, *supra*, 222 Cal.App.4th at pp. 572–575.)

We discern the following principles from these cases. We begin by noting that intent is rarely the subject of direct testimony, but instead must be inferred from the facts and circumstances surrounding the offense. (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.) As these cases demonstrate, expert testimony is oftentimes admitted to establish the specific intent prong of the section 186.22(b)(1) enhancement. Nonetheless, there are limits to the propriety of expert testimony in gang cases. The opinions rendered must be based on the facts of the case, not on supposition or speculation about what a defendant's intent may have been, or could be in some other situation. The expert testimony must rely on the facts adduced at trial to support his or her conclusion about the intent of the defendant. Failure to do so renders the opinion mere speculation.

With these principles in mind, we turn to the facts of this case. We first observe that in this case two gang members were acting together, since Valdivia and Delgado were members of the Norteño criminal street gang. Valdivia carried an unloaded firearm, claiming he did so because he had had trouble with Sureños in the past and the firearm would hopefully allow him to intimidate any Sureños confronting him, thus facilitating his escape. Also important is that Valdivia showed the firearm to Delgado before entering Delgado's vehicle.

From these facts Anderberg explained that it is common for one gang member to show another gang member his firearm before the two travel together to allow the unarmed gang member to decide whether he was willing to expose himself to arrest because of the firearm, and so the two could plan on how they would respond if confronted by rival gang members or law enforcement. Anderberg also opined that the fact Valdivia possessed the firearm while in the vehicle with Delgado benefited the

18.

Norteño criminal street gang, and Valdivia acted in association with the Norteño criminal street gang because he was with Delgado. This testimony was directed at the first element of the section 186.22(b)(1) enhancement.

At issue, however, is the second element of the enhancement, whether Valdivia acted with the specific intent to promote, further, or assist in criminal conduct by gang members. Anderberg did not opine on this issue. However, there is testimony describing Valdivia's intent, which when combined with reasonable inferences from the facts, provides substantial evidence to support the true finding on the section 186.22(b)(1) enhancement.

The direct testimony is Valdivia's admission that he carried the firearm to use defensively in the event he encountered members of a rival gang. Valdivia's stated purpose strongly suggests he intended to use the firearm in an assaultive fashion. Moreover, Anderberg explained the firearm could be used either offensively or defensively. Valdivia's admission that he carried the firearm for defensive purposes did not prevent the jury from inferring he would also use the firearm offensively if the opportunity arose. Whether used offensively or defensively, this is substantial evidence Valdivia specifically intended to use the firearm, at a minimum, to assist in criminal conduct by gang members.

However, the admission by Valdivia that he not only carried the firearm, but that he displayed the firearm to Delgado before he entered Delgado's vehicle provided additional evidence of Valdivia's intent. As explained by Anderberg, the reason gang members inform fellow gang members they are armed when traveling together is at least twofold. First, the unarmed gang member can decide if he wishes to abandon the trip to avoid possible criminal charges. Second, the knowledge that one gang member is armed permits the unarmed gang member to plan for various contingencies that may arise while traveling together. For example, in this case Delgado's knowledge that Valdivia was armed would allow him to plan or make decisions on how to react (offensively or

19.

defensively) if members of a rival gang were encountered, or if the vehicle was stopped by police officers. It is conceivable there was a plan on how to react to a police summons in this case. The two may have decided to dispose of all ammunition for the firearm before stopping the vehicle in response to the police summons, thereby attempting to mitigate the seriousness of the offense. In either event, Valdivia's specific intent was to assist in criminal conduct (carrying a firearm) by gang members.

These inferences are not the type of speculation found in cases cited by Valdivia. They are based on the admissions of Valdivia, and the reasonable inferences that can be drawn from those admissions. Accordingly, both elements of the section 186.22(b)(1) enhancement were supported by substantial evidence.

## II.     Admission of Evidence

Valdivia argues the trial court erred by permitting Anderberg to testify regarding Delgado's encounters with law enforcement. Although he fails to cite Evidence Code section 352, Valdivia's argument asserts the trial court abused its discretion in permitting introduction of the evidence because its prejudicial effect greatly outweighed its probative value.

We review evidentiary rulings, including rulings made pursuant to Evidence Code section 352, for an abuse of discretion. (*People v. Cox* (2003) 30 Cal.4th 916, 955, overruled on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) "A trial court's exercise of discretion in admitting or excluding evidence … will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner .…" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.) Or, stated another way, a trial court abuses its discretion when it appears that its decision exceeds the bounds of reason when all of the circumstances are considered. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) Any error in evidentiary rulings will require reversal only if the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) A miscarriage of justice occurs where

20.

it appears reasonably probable the defendant would have achieved a more favorable result had the error not occurred. (*People v. Breverman* (1998) 19 Cal.4th 142, 149.)

Valdivia summarizes the portion of Anderberg's testimony to which he objects as follows:

> "[E]xtensive evidence concerning co-defendant Rudy Delgado's prior offense conduct and his clothing, tattoos and statements advertising his membership in the Norteño street gang was admitted at appellant's trial.… Of the three predicate offenses admitted at appellant's trial, one involved Delgado, [and] a second involved Delgado's brother. Three street contacts with Delgado were described, and the details from two offense reports relating to Delgado were provided in evidence, which included evidence that Delgado was on parole. Finally, Anderberg testified regarding six times Delgado was booked into custody and claimed Norteño membership. Evidence that Delgado wore red on prior occasions, had gang tattoos, and made statements professing his Norteño 'pride' was provided to the jury."

This is an accurate summary of Anderberg's testimony. We add the testimony consists of seven pages in the reporter's transcript. Two of those pages related to one of the predicate offenses introduced by the prosecution to establish the Norteños meet the statutory definition of a criminal street gang. Since the prosecution was required to introduce evidence to support this element of the section 186.22(b)(1) enhancement, Valdivia has no grounds for complaining about this testimony. We also note the trial court instructed the jury during Anderberg's testimony about the limited use to which the testimony could be put.

The remainder of the evidence was introduced to establish Delgado was a member of the Norteño criminal street gang, evidence relevant to the section 186.22(b)(1) enhancement. The prosecution was required to prove Valdivia possessed the firearm for the benefit of, at the direction of, or in association with a criminal street gang, and he possessed the firearm with the specific intent to promote, further, or assist in any criminal conduct by gang members. Delgado's status as a gang member was critical to proving each element. The incidents described were each benign, with no gruesome crimes

21.

involved.  Because of the highly relevant nature of the testimony, the relatively short duration of the testimony, the trial court's instruction to the jury, and the lack of any significant prejudice as a result of the introduction of this evidence, we conclude the trial court did not abuse its discretion when it overruled Valdivia's objection.

## DISPOSITION

The judgment is affirmed.


_____
KANE, J.

WE CONCUR


_____
CORNELL, Acting P.J.


_____
POOCHIGIAN, J.