Filed 8/12/15  P. v. Nicholson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DESHAUN LEROY NICHOLSON,<br><br>      Defendant and Appellant. | F067712<br><br>(Super. Ct. No. BF147696A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted Deshaun Nicholson of grand theft and found the offense to be gang-related for purposes of Penal Code section 186.22, subdivision (b).  Nicholson, who had a documented history of gang affiliation, was caught on video stealing an article of

jewelry. Although he acted alone in committing the offense, Nicholson was seen in the company of two unidentified individuals shortly before and after the theft occurred. At trial, the prosecution's gang expert opined, in response to a hypothetical question mirroring these facts, that the perpetrator's companions were fellow gang members. The expert also theorized that the perpetrator stole the jewelry with the intention of selling it and using the proceeds to fund narcotics or firearms purchases, which would be beneficial to the gang.

Nicholson presents two arguments on appeal. First, he contends that the opinions of the prosecution's gang expert do not constitute substantial evidence in support of the gang enhancement. Second, he asserts that the trial court abused its discretion by allowing evidence of prior robbery offenses to be admitted for the purpose of establishing his membership in a criminal street gang. We reject the latter claim, but agree that the evidence in the record is insufficient to support the jury's verdict on the special enhancement allegation. We affirm appellant's conviction of the substantive offense, reverse the enhancement finding, and amend the judgment accordingly.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim in this case is Victor Amezcua, the owner of a jewelry store located inside the Golden State Mall in Bakersfield. On March 26, 2013, Mr. Amezcua observed three African-American males stop in front of his store to look at some earrings in a display case. Each of the men stood out to him for a different reason. One member of the group was wearing pajama pants and had a slim build. Another individual was muscular and had visible tattoos on his forearms. The third person had a long beard and wore a red hat.

According to Mr. Amezcua, the tattooed individual came into the store and had a brief conversation with his employee as the other men walked away. The employee, Kenia Garcia, remembered two people entering the store and asking about the cost of a necklace. When she quoted a price of $1,385, they said that they would come back later.

2.

The men left together and went into a sporting goods store, but one of them returned by himself a short while later.

Surveillance cameras captured footage of the tattooed man alone in the jewelry store. He reportedly asked Ms. Garcia if he could take a closer look at a necklace, and she replied that her boss would have to assist him. After being informed of the request, Mr. Amezcua began dealing with the patron directly. Following a discussion about the price of the jewelry, the person asked to see a watch located in a display case near the entrance to the store. As Mr. Amezcua bent down to retrieve the watch, the tattooed man reached out and ripped a gold chain and medallion off of his neck. Mr. Amezcua chased the thief out of the mall and saw him enter a vehicle that was occupied by the man in the pajama pants and the bearded individual with the red hat.

The stolen necklace had an estimated value of $2,500. In addition to filing a police report, Mr. Amezcua engaged in his own efforts to find the thief. While searching through a website dedicated to identifying and locating "Bakersfield's Most Wanted," he came across a photograph of Nicholson and recognized him as the perpetrator. Mr. Amezcua informed police of his discovery, which ultimately led to Nicholson's arrest.

The Kern County District Attorney charged Nicholson by information with felony grand theft from the person (Pen. Code,[1] § 487, subd. (c)). The charge included an enhancement allegation that the crime was committed with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)). It was further alleged that Nicholson had suffered a prior strike conviction (§§ 667; 1170.12) and had served a prior prison term within the meaning of section 667.5, subdivision (b). The case went to trial in June 2013.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The prosecution's case-in-chief included testimony from Mr. Amezcua and Ms. Garcia. The two eyewitnesses testified to the facts summarized above and identified Nicholson in court as the perpetrator. The jury was also shown surveillance footage of the incident, which is described in the record as being of sufficient quality to establish the thief's skin color and the presence of tattoos on his arms. Portions of the video contained images of the two unidentified companions.

Officer Pete Beagley of the Bakersfield Police Department provided expert testimony regarding a local criminal street gang known as the West Side Crips. In his experience, the gang's primary activities consist of murder, assault with firearms and other deadly weapons, robbery, grand theft, and narcotics sales. Members traditionally identify with the colors turquoise and black.

Officer Beagley opined that the defendant was an active member of the West Side Crips at the time of the charged offense. His opinion was based on evidence that Nicholson had admitted his membership to police on several prior occasions. The expert also cited his understanding and belief that various tattoos on Nicholson's arms contained gang-related messages and symbols. Over the objections of defense counsel, Officer Beagley was permitted to further rely upon evidence that Nicholson had previously been arrested with other members of the West Side Crips in connection with two armed robberies.

None of the trial testimony indicated that the people in the surveillance video were dressed in the traditional West Side Crip colors of turquoise and black, but the thief had apparently worn a blue shirt, which Officer Beagley found to be "significant." He did not elaborate on this opinion. The expert also noted that one of the thief's companions had been wearing a hat with the letter "W" on it, which may have been the emblem of the Washington Nationals baseball team. Since W is "one of the common signs or symbols for the West Side Crips," the insignia on the man's hat was important to Officer Beagley's analysis of the video. Furthermore, based on his training and experience, he

4.

knew that members of the West Side Crips generally prefer to commit crimes with fellow gang members rather than with non-gang members.

After eliciting Officer Beagley's opinions concerning Nicholson's gang ties, the prosecutor posed the following hypothetical scenario and question: "[Assume that] three active members or associates of the West Side Crips criminal street gang go into a jewelry store. One is wearing a hat with a W on it. They look at merchandise. Two of the individuals in the group leave the store and wait in a vehicle. The one remaining individual steals a necklace worth $2,500 from the owner of the jewelry store. The individual who steals the necklace is wearing blue jeans and a blue t-shirt and is displaying gang tattoos. After he steals the necklace, he gets into a vehicle with the other two people he had entered the jewelry store with and they drive away. Do you have an opinion as to whether or not the crime or crimes in this particular hypothetical were [committed] for the benefit of, at the direction of, or in association with the West Side Crips criminal street gang?"

Officer Beagley opined that the hypothetical facts were indicative of a crime committed in association with, and for the benefit of, a criminal street gang. When asked to explain his opinion regarding the associative component of the offense, he replied, "The basis of that is that [the perpetrator] is with two other West Side Crips, one of which is actively displa[y]ing a W on his hat promoting West Side Crips. And then also having numerous tattoos on his forearms, that would be significant to me, West Side Crips tattoos, and then promoting the West Side Crips again."

As for the crime being committed to benefit a gang, Officer Beagley offered this explanation: "[B]ased on my training and experience and in dealing in prior investigations, I know that gang members sell this stolen property and with proceeds of the stolen property they buy things such as firearms that they can use against rival gang members or protect themselves from other gang members. These firearms can also be used for crimes like robberies. I know that they will use these proceeds to buy narcotics

5.

that they can sell and make even more profit, use these profits to help bail out their fellow gang members or buy gang paraphernalia. It helps them promote their gang, such as gang clothing or tattoos or jewelry."

The defense case focused on the contested issue of identity. Nicholson's trial attorney argued that his client was not the man in the store surveillance video, and claimed the eyewitness identifications were not credible. Expert testimony was provided by psychologist Robert Shomer, Ph.D., who offered his opinions regarding the lack of reliability in photographic lineup procedures and in-court identifications.

The jury found Nicholson guilty as charged and returned a true finding on the gang enhancement allegation. A bifurcated bench trial was held to determine the prior strike and prior prison term allegations, which were also found to be true. The trial court later exercised its discretion to strike the punishment for the prior prison term enhancement.

Nicholson was sentenced to a total term of 10 years in prison. His sentence was calculated using the upper term of three years for the grand theft conviction, which was doubled because of the prior strike and then enhanced by an additional four years pursuant to section 186.22, subdivision (b). A notice of appeal was filed on the day of sentencing.

**DISCUSSION**

**There is Insufficient Evidence to Support the Gang Enhancement**

Section 186.22, subdivision (b) provides for a sentencing enhancement when the commission of a felony offense is shown to be "gang related." (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).) This requires the prosecution to prove two elements: (1) the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The predicate felony must be connected to the activities of a criminal street gang. (*In re*

6.

*Frank S.* (2006) 141 Cal.App.4th 1192, 1199.)  Therefore, as we have emphasized in prior opinions, a section 186.22 enhancement cannot be based solely upon the defendant's gang affiliations and criminal history.  (*Id*. at pp. 1195, 1199.)

To resolve Nicholson's claim regarding the gang enhancement, we must review the record in the light most favorable to the judgment and determine whether the verdict is supported by substantial evidence.  (*People v. Tully* (2012) 54 Cal.4th 952, 1006-1007.)  Substantial evidence is """"evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."""  (*Id*. at p. 1006.)  All facts which the jury could have reasonably deduced from the evidence are presumed in favor of its findings.  (*Albillar*, *supra*, 51 Cal.4th at p. 60.)

The standard of review does not credit speculation by any party or witness.  (*People v. Marshall* (1997) 15 Cal.4th 1, 35 ["mere speculation cannot support a conviction."].)  """"A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."""  (*People v. Raley* (1992) 2 Cal.4th 870, 891.)  A conclusion does not equate with a reasonable inference when it is """"based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work."""  (*Ibid*.)

Nicholson's arguments rely on a factually analogous case from the First District entitled *In re Daniel C.* (2011) 195 Cal.App.4th 1350 *(Daniel C.)*.  There, a grocery store manager had seen three young men enter his establishment late at night and watched with suspicion as they walked around the store.  After a few minutes, two of the individuals left the store separately.  The remaining member of the group picked up a bottle of whiskey and attempted to leave without paying for it.  When the manager confronted him, a scuffle ensued during which the bottle was broken and the manager sustained injuries.  The young man ran out of the store and was seen fleeing in a truck.  The truck was stopped by police and all four of its occupants were detained.  At least three of those

individuals, including the minor who had tried to steal the alcohol, were later identified as members or associates of a criminal street gang. (*Id*. at pp. 1353-1355.)

The appeal in *Daniel C.* involved a true finding on a section 186.22 enhancement allegation, with the predicate offense being robbery. The finding was based upon the minor's history of gang ties and testimony from the prosecution's gang expert. The expert relied on evidence that the minor was accompanied by one self-admitted member, and another associate, of a gang that was known to identify with the color red. (*Daniel C*., *supra*, 195 Cal.App.4th at pp. 1355-1356.) The minor wore a red hat at the time of the offense, and the people with him were also wearing red clothing. The expert believed the three individuals had coordinated their activities inside of the store and that the crime was beneficial to their gang. He testified that "the commission of violent crimes benefits a gang because it earns the gang respect, in that members of the community hear about the crime, become afraid of the gang, and are thereby encouraged to permit the members to commit other crimes without confronting them or reporting them to the police." (*Id*. at p. 1356.)

The appellate court reversed the minor's gang enhancement for lack of evidence to support the specific intent requirement of section 186.22, subdivision (b). The court concluded there was no evidence the minor acted in concert with his companions when he stole the whiskey and assaulted the store employee. "Appellant's companions left the store before he picked up the liquor bottle, and they did not assist him in assaulting [the victim]. Indeed, there is no evidence in the record that appellant's companions even saw what happened in the store after they left. Moreover, there is no evidence that [the victim] was aware that appellant, or his companions who had been in the store earlier, were gang members or 'affiliates.'" (*Daniel C*., *supra*, 195 Cal.App.4th at pp. 1361.) Evidence that all three boys had worn red clothing was not enough to substantiate the expert's opinion that the offense was gang-related. (*Id*. at p. 1363.)

8.

The *Daniel C.* opinion focuses on the need for proof of a specific intent to promote, further, or assist in *criminal conduct by gang members*. (*Daniel C.*, *supra*, 195 Cal.App.4th at pp. 1362.) "[T]here was no evidence in the record that [the companions] committed or were charged with *any* crime in connection with appellant's theft of the liquor bottle from the supermarket. Thus, it cannot be inferred from the facts and circumstances of appellant's crime, standing alone, that his purpose in committing it was to promote, further, or assist criminal conduct by gang members." (*Ibid.*)

Respondent attempts to distinguish *Daniel C.* by arguing that one of Nicholson's companions joined him in speaking with Ms. Garcia and inquiring about a particular necklace. Critically, however, the necklace they discussed was not the item that was stolen. As Nicholson points out in his reply brief, there was no evidence that his companions ever saw the gold chain and medallion that Mr. Amezcua was wearing around his neck, much less conspired to steal it. The facts suggest that Nicholson acted impulsively after he returned to the store alone and found himself dealing with the store owner instead of the female employee with whom he had previously spoken. In any event, the jury could not have reasonably inferred that Nicholson's companions knew or expected that he would commit the crime for which he was convicted, i.e., theft of property from the person of Mr. Amezcua.

We do note one significant distinction between the facts in *Daniel C.* and those in the present appeal, but the difference weighs in Nicholson's favor. In *Daniel C.*, the appellate court found there was substantial evidence of gang association to satisfy the first requirement of the enhancement because the identities of the perpetrator's companions were known, and there was solid proof that those individuals were common members or affiliates of a particular gang. (*Daniel C.*, *supra*, 195 Cal.App.4th at pp. 1358-1359.) Here, the only evidence to support the prosecution's theory that Nicholson's companions were gang members was the presence of a "W" on one of their hats and the unremarkable proposition that gang members prefer to commit crimes with

9.

other gang members. It is questionable whether such a meager showing can be characterized as substantial evidence. We need not make that determination, however, because the finding of intent under the second prong of the analysis could only have been based upon speculation.

It is settled that a properly qualified expert may render an opinion as to whether or not a crime is gang-related. (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; *People v. Gardeley* (1996) 14 Cal.4th 605, 616-617 (*Gardeley*.) However, the opinion must be based on a hypothetical question that is "rooted in facts shown by the evidence." (*Gardeley*, *supra*, 14 Cal.4th at p. 618.) A gang expert's testimony without such facts is insufficient to support a true finding under section 186.22, subdivision (b). (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 665 (*Ochoa*).)

Officer Beagley's opinion in relation to the intent behind Nicholson's actions was entirely conjectural. Rather than pointing to specific facts in the case, he began with the assumption that the perpetrator intended to sell the necklace. There was no evidence of what became of the necklace after Nicholson stole it, nor proof that Nicholson had any prior history of fencing stolen goods. The expert then speculated about an array of potential uses for the proceeds of such a sale, e.g., buying illegal drugs to sell for a profit and then using the profits to further other criminal activities. Again, there is nothing in the record to suggest the defendant had a history of drug dealing.

The prosecutor attempted to substantiate Officer Beagley's opinion by asking, "Now, have you spoken to members of the West Side Crips criminal street gang and have they told you that proceeds they get from stealing things, that they sell it and use it, as you suggested, to buy guns, dope, and get tattoos?" The witness replied, "Yes." This question and answer did not elevate the expert's opinion from speculation to reasonable inference. Were that the case, any crime of theft committed by a West Side Crips gang member would presumably be gang related. Our Supreme Court has recognized that "[n]ot every crime committed by gang members is related to a gang." (*Albillar*, *supra*,

10.

51 Cal.4th at p. 60.) The circumstances of the crime must themselves evidence the intent to promote, further, or assist in criminal conduct by gang members. The opinion in *Ochoa, supra,* is illustrative.

In *Ochoa*, the defendant approached an occupied parked car, pointed a shotgun at the occupant's face, and demanded the vehicle. The defendant made no attempt to identify himself as a gang member. The victim exited and ran away, and the defendant drove off in the car. At trial, a law enforcement officer testified that the defendant was a member of a particular gang, that car theft was the gang's "signature crime," and that carjacking was also a typical gang crime because it allowed members "to obtain a car, and most likely go out [and] either commit some other type of crime, or sell it for weapons, drugs, things of that nature." The prosecution's gang expert opined that the offense was committed for the benefit of the defendant's gang because stealing the car provided an economic benefit and also impacted the gang's reputation in the community. (*Ochoa*, *supra*, 179 Cal.App.4th at pp. 653-656.)

On appeal, the Fourth District concluded that nothing in the circumstances of the offense supported the expert's inference that the crime was gang-related. (*Ochoa*, *supra*, 179 Cal.App.4th at pp. 661-662.) "[C]arjacking is a crime, but not one that is necessarily gang related…. There was no evidence that *only* gang members committed carjackings or that a gang member could not commit a carjacking for personal benefit, rather than for the benefit of the gang." (*Ibid*.) "While the [expert] effectively testified that carjacking by a gang member would always be for the benefit of the gang, this '"did nothing more than [improperly] inform the jury how [the expert] believed the case should be decided,"' without any underlying factual basis to support it." (*Id*. at p. 662.)

This district's opinion in *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*) is also instructive. In *Ramon*, two gang members were stopped by police while driving through a section of Kern County which was known to be the traditional territory of their gang. The vehicle had been reported stolen and officers found an unregistered firearm

11.

underneath the driver's seat. The defendant driver was later convicted of receiving a stolen vehicle, possession of a firearm by an active gang member, and carrying a loaded firearm in public for which he was not the registered owner. The jury found each of these crimes to be gang-related for purposes of section 186.22, subdivision (b). (*Id.* at pp. 846-848.)

During the *Ramon* defendant's trial, the prosecution's gang expert testified that car theft was one of the primary activities of the defendant's gang and opined that by driving a stolen vehicle with an unregistered firearm within his gang's territory, the defendant could more easily commit crimes without detection because of his ability to abandon the vehicle and gun afterwards, knowing it would be difficult to trace the items back to him. (*Id.* at pp. 847-848.) Therefore, driving a stolen vehicle and possessing a stolen firearm provided a benefit to the defendant's gang. The expert further opined that a stolen vehicle and unregistered gun could be used to spread fear and intimidation within the gang's territory. (*Id.* at p. 848.)

We reversed the gang enhancements in *Ramon* after concluding there was no evidentiary foundation for the jury's findings. The jury could only have relied upon the opinions of the gang expert, but those opinions were based on speculation. "There were no facts from which the expert could discern whether [defendant and his companion] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence." (*Ramon*, *supra*, 175 Cal.App.4th at p. 851.)

Unlike the *Ramon* defendant, Nicholson did not commit the underlying offense in the presence of another gang member, which strengthens his position on the enhancement issue. Section 186.22, subdivision (b) may be applied to a lone actor, but "where the defendant acts alone, the combination of the charged offense and gang membership alone is insufficient to support an inference on the specific intent prong of the gang

12.

enhancement." (*People v. Rios* (2013) 222 Cal.App.4th 542, 573-574.) As in *Daniel C.*, there is no evidence of criminal conduct by other gang members which Nicholson was supposedly intending to promote, further, or assist by stealing Mr. Amezcua's necklace. Any such conclusions are necessarily based upon guesswork.

In summary, the facts and circumstances of the offense do not, standing alone, constitute substantial evidence to support the inference that Nicholson stole the victim's necklace for the purpose of promoting, furthering, or assisting in criminal conduct by gang members. The crime did not occur in gang territory, nor did Nicholson make an affirmative attempt to identify himself as a gang member while committing the offense.

Although he was seen with two purported gang members immediately before and after the theft occurred, Nicholson acted alone in committing the offense. Given the lack of any evidence that his companions saw Mr. Amezcua's necklace before the theft occurred, it would be speculative to conclude they were involved in a plot to commit the predicate felony. Officer Beagley's theories as to Nicholson's motive for stealing the necklace added layers of supposition to an already conjectural opinion regarding the gang-related nature of the crime. For these reasons we conclude that Nicholson's case is not materially distinguishable from *Daniel C.*, *supra*, and find the evidence insufficient to support the gang enhancement under section 186.22, subdivision (b).

**No Prejudicial Error in the Admission of Evidence Regarding Appellant's Criminal History**

Nicholson's second claim is characterized as an alternative argument for reversal of the section 186.22 enhancement based on the allegedly erroneous admission of evidence showing his involvement in prior robbery offenses. Since we are reversing the gang enhancement on other grounds, the question is whether admission of the challenged evidence was unduly prejudicial in relation to the grand theft conviction. We conclude it was not.

13.

As mentioned above, Officer Beagley was permitted to discuss and rely upon hearsay evidence of Nicholson's criminal history. The expert's testimony revealed that Nicholson and a fellow West Side Crips gang member had been identified as suspects in an armed robbery several years prior to the subject incident. The jury was also informed that Nicholson was arrested another time on suspicion of committing armed robbery at a location within the West Side Crips' territory. The trial court admitted the evidence over a defense objection made pursuant to Evidence Code section 352, finding the subject matter relevant to the gang enhancement allegation and determining that its probative value was not substantially outweighed by the likelihood of a prejudicial effect.

A trial court's rulings on the admissibility of evidence are reviewed for abuse of discretion. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.) The exercise of discretion to admit evidence pursuant to Evidence Code section 352 is not erroneous unless the probative value of the evidence is clearly outweighed by its prejudicial impact. (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274.) When an abuse of discretion is shown, the error is evaluated under the test for prejudice articulated in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*). (*People v. Marks* (2003) 31 Cal.4th 197, 227.) The *Watson* standard asks whether there is a reasonable probability that, but for the error, the defendant would have obtained a more favorable result at trial. (*Watson*, *supra*, 46 Cal.2d at pp. 836-837.)

Nicholson claims the hearsay testimony about his prior criminal behavior was cumulative of more compelling proof of his gang affiliations (e.g. self-admitted membership in the West Side Crips), and was thus more prejudicial than probative under Evidence Code section 352. He does not attempt to argue that he suffered prejudice in relation to the grand theft conviction, nor does the record support any such argument. On the issue of identity, the prosecution's case rested upon two eyewitness identifications and was further bolstered by video footage of the crime. Given the strength of this evidence, and the jury's ability to decide for itself whether the man in the surveillance

14.

video was Nicholson, it is not reasonably probable that Nicholson would have been acquitted of the charged crime had it not been for Officer Beagley's discussion of his alleged criminal history. Thus, even assuming for the sake of argument that the trial court abused its discretion by admitting evidence of Nicholson's criminal history, the alleged error was harmless. We therefore affirm appellant's conviction of the substantive offense.

## DISPOSITION

The true finding on the section 186.22, subdivision (b) enhancement allegation is reversed. The gang enhancement is ordered stricken from the judgment and appellant's sentence is modified accordingly. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and send a certified copy of same to the Department of Corrections and Rehabilitation.

_____

GOMES, Acting P.J.

WE CONCUR:


_____

DETJEN, J.


_____

FRANSON, J.

15.